**Robert ROSENSPAN, Plaintiff-Appellant,**

v.

**UNITED STATES of America, Defendant-Appellee.**

**No. 295, Docket 35100.**

United States Court of Appeals, Second Circuit.

Argued Jan. 14, 1971.

Decided Feb. 18, 1971.

---

James B. Lewis, New York City (Paul, Weiss, Goldberg, Rifkind, Wharton & Garrison, and Ira B. Shepard, New York City, of counsel), for plaintiff-appellant.

Richard Farber, Atty., Tax Division, Dept. of Justice, Washington, D. C. (Johnnie M. Walters, Asst. Atty. Gen., Meyer Rothwacks and Ann E. Belanger, Attys., Tax Division, Washington, D. C., Edward R. Neaher, U. S. Atty., for the Eastern District of New York, Brooklyn, N. Y., of counsel), for defendant-appellee.

Before WATERMAN, FRIENDLY and KAUFMAN, Circuit Judges.

FRIENDLY, Circuit Judge:

This appeal is from the dismissal on the merits of an action for refund of income taxes, brought in the District Court for the Eastern District of New York, 316 F.Supp. 194. The taxes were paid as a result of the Commissioner's disallowance of deductions for unreimbursed expenses for meals and lodging, allegedly incurred "while away from

home in the pursuit of a trade or business," I.R.C. § 162(a) (2), in 1962 and 1964.

Plaintiff, Robert Rosenspan, was a jewelry salesman who worked on a commission basis, paying his own traveling expenses without reimbursement. In 1962 he was employed by one and in 1964 by two New York City jewelry manufacturers. For some 300 days a year he traveled by automobile through an extensive sales territory in the Middle West, where he would stay at hotels and motels and eat at restaurants. Five or six times a year he would return to New York and spend several days at his employers' offices. There he would perform a variety of services essential to his work—cleaning up his sample case, checking orders, discussing customers' credit problems, recommending changes in stock, attending annual staff meetings, and the like.

Rosenspan had grown in Brooklyn and during his marriage had maintained a family home there. After his wife's death in 1948, he abandoned this. From that time through the tax years in question he used his brother's Brooklyn home as a personal residential address, keeping some clothing and other belongings there, and registering, voting, and filing his income tax returns from that address. The stipulation of facts states that, on his trips to New York City, "out of a desire not to abuse his welcome at his brother's home, he stayed more often" at an inn near the John F. Kennedy Airport. It recites also that "he generally spent his annual vacations in Brooklyn, where his children resided, and made an effort to return to Brooklyn whenever possible," but affords no further indication where he stayed on such visits. In 1961 he changed the registration of his automobile from New York to Ohio, giving as his address the address of a cousin in Cincinnati, where he also received mail, in order to obtain cheaper automobile insurance. Rosenspan does not contend that he had a permanent abode or residence in Brooklyn or anywhere else.

The basis for the Commissioner's disallowance of a deduction for Rosenspan's meals and lodging while in his sales territory was that he had no "home" to be "away from" while traveling. Not denying that this would be true if the language of § 162(a) (2) were given its ordinary meaning, Rosenspan claimed that for tax purposes his home was his "business headquarters," to wit, New York City where his employers maintained their offices, and relied upon the Commissioner's long advocacy of this concept of a "tax home," see, e. g., G.C.M. 23672, 1943 Cum.Bull. 66–67. The Commissioner responded that although in most circumstances "home" means "business headquarters," it should be given its natural meaning of a permanent abode or residence for purposes of the problem here presented. Rosenspan says the Commissioner is thus trying to have it both ways.

The provision of the Internal Revenue Code applicable for 1962 read:

" § 162. *Trade or business expenses.*

(a) In general.—There shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, including—

\*  \*  \*  \*  \*  \*

(2) traveling expenses (including the entire amount expended for meals and lodging) while away from home in the pursuit of a trade or business;
\*  \*  \* "

For 1964 the statute remained the same except for the interpolation in the parenthesis after "lodging" of the words "other than amounts which are lavish or extravagant under the circumstances"— a change not relevant in this case.

What is now § 162(a) (2) was brought into the tax structure by § 214 of the Revenue Act of 1921, 42 Stat. 239. Prior to that date, § 214 had permitted the deduction of "ordinary and necessary expenses paid or incurred  \*  \*  \* in carrying on any trade or business," Revenue Act of 1918, 40 Stat. 1066 (1918), with-

out further specification. In a regulation, the Treasury interpreted the statute to allow deduction of "traveling expenses, including railroad fares, and meals and lodging *in an amount in excess of any expenditures ordinarily required for such purposes when at home*," T.D. 3101, amending Article 292 of Regulations 45, 3 Cum.Bull. 191 (1920) (emphasis supplied). A formula was provided for determining what expenditures were thus "ordinarily required"; the taxpayer was to compute such items as rent, grocery bills, light, etc. and servant hire for the periods when he was away from home, and divide this by the number of members of his family. Mim. 2688, 4 Cum.Bull. 209–11 (1921). The puzzlement of the man without a home was dealt with in a cryptic pronouncement, O.D. 905, 4 Cum.Bull. 212 (1921):

> Living expenses paid by a single taxpayer who has no home and is continuously employed on the road may not be deducted in computing net income.

The 1921 amendment, inserting what is now § 162(a) (2)'s allowance of a deduction for the entire amount of qualified meals and lodging, stemmed from a request of the Treasury based on the difficulty of administering the "excess" provision of its regulation. See United States v. Correll, 389 U.S. 299, 301, 88 S.Ct. 445, 19 L.Ed.2d 537 n. 6 (1967). While the taxpayer cites statements of legislators in the 1921 Congress that the amendment would provide "a measure of justice" to commercial travelers,[1] there is nothing to indicate that the members making or hearing these remarks were thinking of the unusual situation of the traveler without a home. There is likewise nothing to indicate that the Treasury sought, or that Congress meant to require, any change in the ruling that disallowed deductions for living expenses in such a case. The objective was to eliminate the need for computing the expenses "ordinarily required" at home by

a taxpayer who had one, and the words used were appropriate to that end. If we were to make the unlikely assumption that the problem of the homeless commercial traveler ever entered the legislators' minds, the language they adopted was singularly inept to resolve it in the way for which plaintiff contends. Thus, if the literal words of the statute were decisive, the Government would clearly prevail on the simple ground that a taxpayer cannot be "away from home" unless he has a home from which to be away, cf. Haddleton, Traveling Expenses "Away from Home," 17 Tax L. Rev. 261, 263, 286 (1962); 49 Va.L.Rev. 125, 126–28 (1963). Although that is our ultimate conclusion, the Supreme Court has wisely admonished that "More than a dictionary is thus required to understand the provision here involved, and no appeal to the 'plain language' of the section can obviate the need for further statutory construction," United States v. Correll, *supra*, 389 U.S. at 304 n. 16, 88 S.Ct. at 448. We turn, therefore, in the first instance to the Court's decisions.

The initial Supreme Court decision bearing on our problem is C. I. R. v. Flowers, 326 U.S. 465, 66 S.Ct. 250, 90 L.Ed. 203 (1946). Flowers, a lawyer, had a "home" in the conventional sense in Jackson, Mississippi, but his principal post of business was at the main office of his employer, the Gulf, Mobile & Ohio Railroad in Mobile, Alabama. Flowers sought to deduct the cost of transportation for his trips to Mobile and the meal and lodging expenses which he incurred in that city. In upholding the Commissioner's disallowance of these deductions, the Court said that "three conditions must thus be satisfied before a traveling expense deduction may be made" under what was substantially the present statute, 326 U.S. at 470, 66 S.Ct. at 252. These were:

(1) The expense must be a reasonable and necessary traveling expense, as

---

1. Representative Hawley, a member of the Committee on Ways and Means, 61 Cong. Rec. 5201 (1921); see also the remarks of Senator Walsh, a member of the Committee on Finance, 61 Cong.Rec. 6673 (1921).

that term is generally understood. This includes such items as transportation fares and food and lodging expenses incurred while traveling.

(2) The expense must be incurred "while away from home."

(3) The expense must be incurred in pursuit of business. This means that there must be a direct connection between the expenditure and the carrying on of the trade or business of the taxpayer or of his employer. Moreover, such an expenditure must be necessary or appropriate to the development and pursuit of the business or trade.

It noted that "The meaning of the word 'home' * * * with reference to a taxpayer residing in one city and working in another has engendered much difficulty and litigation," with the Tax Court and the administrative officials having "consistently defined it as the equivalent of the taxpayer's place of business" and two courts of appeals having rejected that view and "confined the term to the taxpayer's actual residence," 326 U.S. at 471–472, 66 S.Ct. at 253. The Court found it "unnecessary here to enter into or to decide this conflict," 326 U.S. at 472, 66 S.Ct. at 253. This was because the Tax Court had properly concluded "that the necessary relationship between the expenditures and the railroad's business was lacking." The railroad's interest was in having Mr. Flowers at its headquarters in Mobile; it "gained nothing" from his decision to continue living in Jackson, 326 U.S. at 472–474, 66 S.Ct. at 253–254; hence, the third condition the *Flowers* Court had enunciated as a prerequisite to deductibility was absent. Mr. Justice Rutledge dissented. He did not believe that when Congress used the word "home," it meant "business headquarters," and thought the case presented no other question, 326 U.S. at 474, 66 S.Ct. 250. The most that Rosenspan can extract from *Flowers* is that it did not decide *against* his contention that the employer's business headquarters is the employee's tax home.

The Court's next venture into this area was in Peurifoy v. C. I. R., 358 U.S. 59, 79 S.Ct. 104, 3 L.Ed.2d 30 (1958). That case dealt with three construction workers employed at a site in Kinston, North Carolina, for periods of 20½, 12½, and 8½ months respectively, who maintained permanent residences elsewhere in the state. The Tax Court had allowed them deductions for board and lodging during the employment at Kinston and expenses in regaining their residences when they left, apparently of their own volition and before completion of the project.[2] The Fourth Circuit had reversed, C. I. R. v. Peurifoy, 254 F.2d 483 (1957). After having granted certiorari "to consider certain questions as to the application of § 23(a) (1) (A) of the Internal Revenue Code of 1939 raised by the course of decisions in the lower courts since our decision in Commissioner v. Flowers [326 U.S. 465, 66 S.Ct. 250, 90 L.Ed. 203]," 358 U.S. at 59–60, 79 S.Ct. at 105, the Court announced in a *per curiam* opinion that it had "found it inappropriate to consider such questions." It read *Flowers* as establishing that "a taxpayer is entitled to deduct unreimbursed travel expenses * * * only when they are required by 'the exigencies of business,'" a "general rule" which the majority seemed to feel would mandate disallowance of the deductions under consideration. However, the Court went on to acknowledge an exception to this rule engrafted by the Tax Court, which would have allowed the claimed deductions if the taxpayer's employment were shown to be "temporary" rather than "indefinite" or "indeterminate." Nevertheless, even within this framework, the majority thought that the Court of Appeals had been justified in holding the Tax Court's finding of temporary employment to be clearly erroneous. Mr. Justice Douglas joined by Justices Black and Whittaker, dissented.

**2.** The Court of Appeals explicitly so found with respect to two of the three, 254 P.2d 483, 485 (4 Cir. 1957).

Adopting Mr. Justice Rutledge's position in *Flowers*, they disagreed "with the Commissioner's contention that 'home' is synonymous with the situs of the employer's business." While adhering to "the exigencies of business" test announced in *Flowers*, they thought this requirement was satisfied by the fact that, in view of the impracticability of construction workers' moving their homes from job to job, "the expenses incurred were necessary, not to the business of the contractor for whom the taxpayers worked, but for the taxpayers themselves in order to carry on their chosen trade," 358 U.S. at 62–63, 79 S.Ct. at 107 n. 6. While the three dissenting Justices thus rejected the Commissioner's identification of "home" with "the situs of the employer's business," the majority did not adopt it and, so far as our problem is concerned, that matter remained in the state of indecision where *Flowers* had left it.

We come finally to C. I. R. v. Stidger, 386 U.S. 287, 87 S.Ct. 1065, 18 L.Ed.2d 53 (1967), where the Court sustained the disallowance of the expense for meals incurred by a Marine Corps captain who had been assigned to a base in Japan, while his wife and children—prohibited from accompanying him to that post—remained near his previous duty station in California. After noting that in this case there could be no question of the "direct connection between the expenditure and the carrying on of the trade or business of the taxpayer or of his employer," 386 U.S. at 289–90, 87 S.Ct. at 1067, the Court reviewed the continuing disagreement among the circuits over the Commissioner's view "that 'home' meant the taxpayer's principal place of business or employment whether or not it coincided with his place of residence," [3] and took note of a ruling of the Board of Tax

Appeals that members of Congress could not deduct living expenses incurred in Washington, D. C.,[4] and of Congress' response by enacting a special provision making the legislator's place of residence within the district that he represents his home but limiting the amount of deductible living expenses to $3,000, 66 Stat. 467 (1952), now codified in I.R.C. § 162(a). However, the Court again found it unnecessary either to approve or to disapprove the Commissioner's interpretation of "home," since it found that "in the context of the military taxpayer, the Commissioner's position has a firmer foundation," 386 U.S. at 292, 87 S.Ct. at 1069. This built "on the terminology employed by the military services to categorize various assignments and tours of duty, and also on the language and policy of the statutory provisions prescribing travel and transportation allowances for military personnel," *id.* The Court particularly stressed "the fact that Congress traditionally has provided a special system of tax-free allowances for military personnel," 386 U.S. at 294, 87 S.Ct. at 1070. Mr. Justice Douglas, who had written the dissent in *Peurifoy*, again joined by Justice Black and now by Justice Fortas, dissented. He thought it was "clear that home means residence, with the qualification that a taxpayer should establish his residence as near to his place of employment as is reasonable," 386 U.S. at 297, 87 S.Ct. at p. 1071.[5] The fact that Congress provides special allowances for military personnel did not, in Justice Douglas' view, call for what he deemed an unnatural reading of § 162(a) (2) even in that context.

■ Proper analysis of the problem has been beclouded, and the Government's position in this case has been made more difficult than it need be, by

---

3. Although the opinion lists this circuit as having subscribed to the Commissioner's definition of "home," citing O'Toole v. C. I. R., 243 F.2d 302 (2 Cir. 1957), and a sentence in our *per curiam* opinion does read that way, the facts of *O'Toole* presented a typical *Flowers* situation and the *ratio decidendi* was the same as in that case, namely, that "The job, not the

taxpayer's pattern of living, must require the traveling expenses," 243 F.2d at 303.

4. Lindsay v. C. I. R., 34 B.T.A. 840 (1936). This had long been the Commissioner's position. O.D. 864, 4 Cum.Bull. 211 (1921).

5. Perhaps more accurately, he should be treated as if he had done so.

the Commissioner's insistence that "home" means "business headquarters," despite the Supreme Court's having thrice declined to endorse this, and its rejection by several courts of appeals, see Flowers v. C. I. R., 148 F.2d 163 (5 Cir. 1945), rev'd on other grounds, 326 U.S. 465, 66 S.Ct. 250, 90 L.Ed. 203 (1946); United States v. LeBlanc, 278 F.2d 571 (5 Cir. 1960); Burns v. Gray, 287 F.2d 698 (6 Cir. 1961); James v. United States, 308 F.2d 204 (9 Cir. 1962). But cf. C. I. R. v. Mooneyhan, 404 F.2d 522 (6 Cir. 1968), cert. denied, 394 U.S. 1001, 89 S.Ct. 1593, 22 L.Ed.2d 778 (1969); Wills v. C. I. R., 411 F.2d 537, 540 (9 Cir. 1969). When Congress uses such a non-technical word in a tax statute, presumably it wants administrators and courts to read it in the way that ordinary people would understand, and not "to draw on some unexpressed spirit outside the bounds of the normal meaning of words," Addison v. Holly Hill Fruit Prods., Inc., 322 U.S. 607, 617, 64 S.Ct. 1215, 1221, 88 L.Ed. 1488 (1944). The construction which the Commissioner has long advocated not only violates this principle but is unnecessary for the protection of the revenue that he seeks. That purpose is served, without any such distortion of language, by the third condition laid down in Flowers, supra, 326 U.S. at 470, 66 S.Ct. at 252, namely, "that there must be a direct connection between the expenditure and the carrying on of the trade or business of the taxpayer or of his employer" and that "such

an expenditure must be necessary or appropriate to the development and pursuit of the business or trade." These requirements were enough to rule out a deduction for Flowers' lodging and meals while in Mobile even if he was "away from home" while there. The deduction would not have been available to his fellow workers living in that city who obtained similar amenities in their homes or even in the very restaurants that Flowers patronized, and Flowers was no more compelled by business to be away from his home while in Mobile than were other employees of the railroad who lived there.

Since the Commissioner's definition of "home" as "business headquarters" will produce the same result as the third Flowers condition in the overwhelming bulk of cases arising under § 162(a) (2), courts have often fallen into the habit of referring to it as a ground or an alternate ground of decision, as this court did in O'Toole v. C. I. R., 243 F.2d 302 (1957), see fn. 3. But examination of the string of cases cited by plaintiff as endorsing the "business headquarters" test has revealed almost none, aside from the unique situations involving military personnel considered above, which cannot be explained on the basis that the taxpayer had no permanent residence, or was not away from it, or maintained it in a locale apart from where he regularly worked as a matter of personal choice rather than business necessity.[6] This principle likewise affords a satisfactory

---

6. Whether the "personal choice" principle has not sometimes been pressed too far is another matter. The case of a Congressman, see fn. 4, may have been one such instance. It is also hard to be completely satisfied with the distinction between Barnhill v. C. I. R., 148 F.2d 913 (4 Cir. 1945), disallowing meals and lodging deductions while in the state capital to justices of the Supreme Court of North Carolina who spent approximately 7 months a year there, but maintained their residences elsewhere, in deference to a custom, that at the time of selection, the justices should be fairly distributed throughout the state, and a decision allowing such a deduction in the case of a justice of the Supreme Court of Louisiana

who spent 9 months at the Court's headquarters in New Orleans but who, in contrast to the unwritten North Carolina practice, was required by the state constitution to maintain his residence in his own parish, United States v. LeBlanc, 278 F.2d 571 (5 Cir. 1960). England v. United States, 345 F.2d 414 (7 Cir. 1965), cert. denied, 382 U.S. 986, 88 S.Ct. 537, 15 L.Ed.2d 475 (1966), is another case in which the "personal choice" principle scarcely provides a satisfactory basis of decision if it suffices that the expenses be necessary to the taxpayer-employee's "trade or business" as distinguished from his employer's. As to this, see the discussion in the text, infra.

rationale for the "temporary" employment cases, see 49 Va.L.Rev., *supra*, at 162–63. When an assignment is truly temporary, it would be unreasonable to expect the taxpayer to move his home, and the expenses are thus compelled by the "exigencies of business"; when the assignment is "indefinite" or "indeterminate," the situation is different and, if the taxpayer decides to leave his home where it was, disallowance is appropriate, not because he has acquired a "tax home" in some lodging house or hotel at the worksite but because his failure to move his home was for his personal convenience and not compelled by business necessity. Under the facts here presented, we need not decide whether in the case of a taxpayer who is not self-employed, the "exigencies of business" which compel the traveling expenses away from home refer solely to the business of his employer or to the business of the taxpayer as well. We note only that the latter contention is surely not foreclosed by decisions to date. See Peurifoy v. C.I.R., *supra*, 358 U.S., at 62–63, 79 S.Ct. at 107, n. 6 (Douglas, J., dissenting); Rev.Rul. 60–189, 1960–1 Cum.Bull. 60; see generally 49 Va.L.Rev., *supra*, at 136–45; and Trent v. C. I. R., 291 F.2d 669, and cases cited, especially at 674 (2 Cir. 1961).

Shifting the thrust of analysis from the search for a fictional "tax home" to a questioning of the business necessity for incurring the expense away from the taxpayer's permanent residence thus does not upset the basic structure of the decisions which have dealt with this problem. Compare 49 Va.L.Rev., *supra*, at 162–63, with Haddleton, *supra*, at 286. It merely adopts an approach that better effectuates the congressional intent in establishing the deduction and thus provides a sounder conceptual framework for analysis while following the ordinary meaning of language. Cf. 19 U.Chi.L. Rev. 534, 545 (1952); 49 Va.L.Rev., *supra*, at 163. We see no basis whatever for believing that when the 1921 Congress eliminated the requirement for determining the excess of the costs of meals and lodging while on the road over what they would have been at home, it meant to disallow a deduction to someone who had the expense of maintaining a home from which business took him away but possessed no business headquarters. By the same token we find it impossible to read the words "away from home" out of the statute, as Rosenspan, in effect, would have us do and allow a deduction to a taxpayer who had no "home" in the ordinary sense. The limitation reflects congressional recognition of the rational distinction between the taxpayer with a permanent residence—whose travel costs represent a duplication of expense or at least an incidence of expense which the existence of his permanent residence demonstrates he would not incur absent business compulsion—and the taxpayer without such a residence. Cf. James v. United States, *supra*, 308 F.2d at 207. We fail to see how Rosenspan's occasional trips to New York City, assuming for the sake of argument that his "business headquarters" was in New York rather than in his sales territory, differentiate him economically from the homeless traveling salesman without even the modicum of a business headquarters Rosenspan is claimed to have possessed. Yet we approved disallowance of the deduction in such a case many years ago, Duncan v. C. I. R., 17 B.T.A. 1088 (1929), aff'd per curiam, 47 F.2d 1082 (2 Cir. 1931), as the Ninth Circuit has done more recently, James v. United States, *supra*, 308 F.2d 204.

It is enough to decide this case that "home" means "home" and Rosenspan had none. He satisfied the first and third conditions of *Flowers, supra,* 326 U.S. at 470, 66 S.Ct. 250, but not, on our reading of the statute, the second. The judgment dismissing the complaint must therefore be affirmed.