LUKE JAMES and FLORENCE G. MONROE, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Monroe v. Commissioner
Docket No. 4421-77.
United States Tax Court
T.C. Memo 1979-100; 1979 Tax Ct. Memo LEXIS 428; 38 T.C.M. (CCH) 466; T.C.M. (RIA) 79100; March 20, 1979, Filed Luke James Monroe, pro se. Anthony M. Bruce, for the respondent. FAY
MEMORANDUM FINDINGS OF FACT AND OPINION FAY, Judge: Respondent determined a deficiency of $3,451.77 in petitioners' Federal income tax for 1975. The issues for decision are: (1) Whether petitioner Luke James Monroe was "away from home" *430 during 1975 within the meaning of section 162(a)(2); [1]
(2) Whether a Massachusetts state income tax refund received by petitioners in 1975 is taxable; and (3) Whether certain contributions made by petitioners to a Keogh plan are deductible in 1975. FINDINGS OF FACT Some of the facts have been stipulated and are so found. At the time of filing their petition herein, Luke James and Florence G. Monroe, husband and wife, resided in Johnson City, N.Y.
In late 1974, Luke James Monroe (hereafter petitioner or Luke) was informed by his then employer, Raytheon Service Company (Raytheon), that he was being sent from Massachusetts to North Dakota, beginning in January 1975, to commence work on a project for Raytheon as subcontractor for Western Electric Company. In accordance with this directive, petitioners gave up their Massachusetts apartment, placed most of their furniture in storage, and moved to North Dakota. They arrived in North Dakota on January 10, 1975, where Luke began working on Janury 13, 1975. While residing in North Dakota, *431 petitioners were required to live in an apartment provided them by Western Electric Company for which $3,714 was withheld as rent from Luke's wages during 1975. During the period in question, petitioners paid North Dakota income taxes, but paid no Massachusetts income taxes. They established bank accounts in North Dakota and retained a bank account in Massachusetts. The couple registered their car in North Dakota but retained their Massachusetts drivers' license. In 1975 petitioners had occasion to return to Massachusetts, where they resided in a motel during their visit. While in North Dakota, the only expenses which petitioners incurred in Massachusetts were for furniture storage and motel rentals during any visits. By letter dated September 25, 1975, petitioner was advised by his employer that: In connection with your temporary assignment [in North Dakota] this is to advise you that your tour is being further extended for a period of 12 months ending September 30, 1976. You are again reminded that the length of this tour is subject to change in that it may be shortened because of subsequent Government direction or because of the needs of the business. It may also *432 be such that this tour will need to be further extended. If so, we would expect to notify you no later than 60 days prior to the completion of your assignment. On February 12, 1976, Luke was formally notified that his employment in North Dakota had terminated. Thereafter, on February 20, 1976, petitioners left North Dakota and returned to Massachusetts. In connection with their stay in North Dakota, petitioners on their 1975 Federal income tax return claimed employee business expenses of $9,807.29. On their Federal income tax return for 1974, petitioners itemized their deductions and during 1975 they received a refund of an overpayment of state income taxes from the Commonwealth of Massachusetts in the amount of $570.85. This amount was not reported by petitioners as income on their 1975 Federal income tax return. In computing their Federal income taxes for 1975, petitioners claimed a deduction of $4,372 for payments made during 1975 to a "Keogh Plan." During at least a part of 1975, Luke was covered by Raytheon's noncontributory retirement plan. While living in North Dakota, Luke was reimbursed $1,092 by Raytheon for his commuting to and from the worksite. This amount *433 was not reported as income by petitioners on their 1975 return. Respondent in his statutory notice of deficiency disallowed all but $295.80 of petitioners' claimed employee business expenses. In addition, respondent included in petitioners' income the Massachusetts tax refund which they received in 1975, and disallowed their deduction for contributions to a Keogh plan. Finally, respondent increased petitioners' income by the full amount of the commuting allowance given by Raytheon to Luke. OPINION Before turning to the specific issues in this case, we wish to state that this Court struggled with the record before it in attempting to allow petitioners every deduction to which they are legally entitled. Unfortunately, even after resolving all questions in a manner most favorable to petitioners, neither the facts as presented nor the applicable law would permit us to rule in their favor with respect to any of their contentions. However, we do note that after denying most of petitioners' employee business expenses and many of their itemized deductions, respondent did allow petitioners to deduct certain moving expenses in connection with their relocation to North Dakota, and *434 he also took into account the standard deduction in making his deficiency determination. In 1975 petitioners moved from Massachusetts to North Dakota. While in North Dakota, they incurred and paid expenses for travel, meals, and lodging. The issue for decision is whether such expenses are deductible under section 162(a)(2), which provides: SEC. 162. TRADE OR BUSINESS EXPENSES. (a) In General.--There shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, including-- * * *
(2) traveling expenses (including amounts expended for meals and lodging other than amounts which are lavish or extravagant under the circumstances) while away from home in the pursuit of a trade or business; * * *
Thus, to qualify for a deduction under this section, the following three conditions must be satisfied: (1) The expenses must be ordinary and necessary; (2) The expenses must have been incurred when the taxpayer was "away from home;" and (3) The taxpayer must have incurred the expenses in pursuit of his trade or business; Commissioner v. Flowers,326 U.S. 465 (1946), *435 rehearing denied326 U.S. 812 (1946). In the instant case, the narrow issue is whether Luke was "away from home" at the time the expenditures were incurred. The Second Circuit Court of Appeals, to which an appeal of this case would lie, has interpreted the word "home" as used in section 162(a)(2) to mean the taxpayer's permanent abode or residence rather than his principal place of business. Rosenspan v. United States,438 F.2d 905 (2d Cir. 1971), cert. denied404 U.S. 864 (1971). In Rosenspan the taxpayer, a jewelry salesman, was employed by two New York City jewelry manufacturers. For some 300 days a year he traveled throughout the Middle West where he incurred meal and lodging expenses. Five or six times a year he would return to New York City and spend several days at his employer's offices. The taxpayer had grown in Brooklyn and during the years in question he used his brother's Brooklyn home as his personal residential address, keeping some clothing and other belongings there, and registering, voting, and filing his income tax returns from that address. Further, the taxpayer spent his vacations in Brooklyn, where *436 his children resided, and made an effort to return to Brooklyn whenever possible. The taxpayer did not have a permanent abode or residence in Brooklyn or anywhere else. In rejecting the taxpayer's claimed deduction for travel expenses, the Court reasoned that the taxpayer had no "home" from which he could be away. In other words, the taxpayer did not maintain a permanent residence in the New York City area, and thus his travel costs did not represent a "duplication of expense or at least an incidence of expense which the existence of [a] permanent residence demonstrates he would not incur absent business compulsion." We think the present case is indistinguishable from Rosenspan in all significant respects. After he was notified of his transfer to North Dakota, Luke and his wife gave up their Massachusetts apartment, placed their furniture in storage, and moved to North Dakota. While on occasion petitioners returned to Massachusetts, they did not maintain a permanent residence there. Put simply, petitioners did not maintain two places of abode thereby incurring additional and duplicate living expenses. Accordingly, we hold that at the time the expenses in issue were *437 incurred, petitioners had no "home" in Massachusetts within the meaning of section 162(a)(2), and therefore respondent's determination disallowing such expenses is hereby sustained. [2]
The next issue for decision is whether an income tax refund received by petitioners in 1975 from the Commonwealth of Massachusetts is taxable to them in that year. On their Federal income tax return for 1974, petitioners itemized their deductions and presumably [3] included therein a deduction for Massachusetts income taxes paid. In 1975 petitioners *438 received a refund of an overpayment of such taxes. Respondent has determined that the refund is taxable to petitioners in the year received. Petitioners have the burden of proving otherwise. Rule 142(a), Tax Court Rules of Practice and Procedure. This petitioners have failed to do. Section 61 states that "except as otherwise provided * * *, gross income means all income from whatever source derived." Section 111 excludes from this definition of gross income refunds of state income taxes to the extent a deduction of such state taxes did not reduce Federal taxable income over what it otherwise would have been if the state taxes had not been so deducted. Stated another way, if a deduction of state income taxes does not reduce Federal income taxes, a refund of such state taxes is not includable in gross income. Petitioners have presented no evidence to show that a tax benefit was not derived from a deduction of the taxes paid to Massachusetts. Thus, we hold that the refund of an overpayment of such taxes represents gross *439 income to petitioners under section 61 for their taxable year 1975. The next issue is whether certain contributions made by petitioners to a Keogh plan are allowable deductions. During 1975 Luke was a full-time employee of Raytheon and a participant in Raytheon's noncontributory retirement plan. He testified that he established a Keogh plan and made contributions to it because he did not have a vested interest in any retirement plan other than Social Security, which he did not trust anyway. In the case of a self-employed individual, section 401(c) through section 401(e) permit the establishment of a qualified retirement plan (Keogh Plan). Contributions to such a plan are deductible in an amount not to exceed the lesser of $7,500 or 15 percent of the "earned income" derived from the trade or business with respect to which the plan is established. Secs. 404(e)(1) and (e)(4). Section 401(c)(2) generally defines "earned income" to mean the "net earnings from self-employment" as defined in section 1402(a). In general, "net earnings from self-employment" means the net income from a trade or business of an individual other than his trade or business of being an employee. Secs. *440 1402(a) and 1402(c). In the instant case, there is no evidence to establish that Luke was anything other than an employee of Raytheon during 1975. Further, an examination of his 1975 return does not reflect any other source of income which could be considered "net earnings from self-employment." Accordingly, petitioner is not entitled to deduct the contributions made by him to his Keogh plan in 1975. Finally, while living in North Dakota, Luke was reimbursed $1,092 by Raytheon for his commuting to and from his worksite. In his statutory notice of deficiency, respondent determined that this reimbursement constituted additional compensation to Luke. Petitioners have not made any specific argument with respect to respondent's determination, however, we assume they dispute it. Again, section 61 states that gross income includes "all income from whatever source derived" unless otherwise excepted.There is absolutely no evidence in the record upon which we could base a conclusion that respondent's determination was erroneous. Therefore, we hold that the $1,092 received by Luke as reimbursement for his commuting represents taxable income to petitioners. To reflect the foregoing, *441 Decision will be entered for the respondent.
Footnotes
1. Unless otherwise indicated, all section references are to the Internal Revenue Code of 1954, as in effect for the year in issue.↩
2. Although not entirely clear, petitioners may apparently be contending that sec. 119 has some application to this case. Sec. 119 allows an exclusion from gross income of the value of certain meals and lodging furnished by an employer to an employee if certain conditions are met. One of these conditions is that the meals and lodging be furnished "on the business premises of his employer" within the meaning of sec. 119. As to this requirement, the record is devoid of any facts which would support the conclusion that Luke's meals and lodging were furnished on the business premises of his employer. Thus, petitioners cannot rely on sec. 119.↩
3. It is not entirely clear from the record whether petitioners deducted their 1974 Massachusetts income taxes on their 1974 Federal income tax return.↩