MICHAEL LYNDON HANNA, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Hanna v. Commissioner
Docket No. 7015-91
United States Tax Court
T.C. Memo 1992-256; 1992 Tax Ct. Memo LEXIS 278; 63 T.C.M. (CCH) 2917; May 4, 1992, Filed *278 Decision will be entered under Rule 155. Michael Lyndon Hanna, pro se. Harris Bonnette, for the respondent. DINAN
DINAN
MEMORANDUM OPINION DINAN, Special Trial Judge: This case was heard pursuant to the provisions of section 7443A(b) and Rules 180, 181, and 182. [1] For convenience and clarity, we have combined our findings of fact and opinion. Respondent determined a deficiency and additions to tax in petitioner's Federal income tax for the taxable year 1986 as follows: Additions to Tax
Section
Section
Section
Year
Deficiency
6653(a)(1)(A)
6653(a)(1)(B)
6661(a)
1986
$ 3,228
$ 307.30
50% of the
$ 1,537
interest due
on $ 6,146
After concessions by the parties, the issues for decision are: (1) Whether petitioner failed to report income of $ 7,116.22 in 1986, (2) whether petitioner failed to report income *279 in 1987 of $ 350 thereby reducing the amount of his net operating loss carryback from 1987 to 1986 accordingly, (3) whether petitioner's employment was of a temporary nature during 1986 such that he incurred miscellaneous deductible expenses related to the temporary employment, (4) whether petitioner's employment was of a temporary nature during 1987 such that he incurred miscellaneous deductible expenses related to the temporary employment which contributed to the amount of his net operating loss carryback from 1987 to 1986, (5) whether petitioner is liable for additions to tax pursuant to section 6653(a)(1)(A) and (B), (6) whether petitioner is liable for the addition to tax pursuant to section 6661(a), and (7) whether petitioner is liable for self-employment tax. Some of the facts have been stipulated. The stipulations of fact and accompanying exhibits are incorporated by this reference. Petitioner resided in Red Rock, Texas, at the time he filed his petition. 1 and 2. Unreported income for 1986 and 1987
Respondent determined that petitioner failed to report income in the amounts of $ 7,116.22 and $ 350 for 1986 and 1987, respectively. Petitioner asserts that he did *280 not fail to report income in either amount and that respondent's figure is either wholly unsupported or the result of double inclusion by respondent of certain receipts already accounted for by petitioner. We conclude that petitioner has satisfactorily demonstrated that $ 6,816.22 was erroneously determined by respondent as unreported income of petitioner for 1986. Petitioner has been engaged in the business of manufacturing furniture and the construction of log cabins for several years including 1986 and 1987. Almost all of petitioner's log cabin construction and the majority of his furniture manufacturing during 1986 and 1987 was performed pursuant to contracts with Mr. Bela Karoyli. As petitioner's work on projects for Mr. Karoyli progressed, the cost of a project as originally estimated would frequently be adjusted up or down to reflect the actual cost of the project. When such an adjustment was required, petitioner, as a matter of course, would submit a revised bill to Mr. Karoyli indicating the actual cost of the project. Petitioner referred to three separate instances in which respondent erroneously attributed income to him which was already included in his income. First, *281 respondent erroneously included a receipt for $ 5,560.22 issued by petitioner which was subsequently voided and replaced by a receipt for $ 6,967.35. It is clear from the record that the initial receipt was a partial payment for a cabin which was replaced and adjusted upward by a subsequent receipt to reflect further costs. Rather than disregard the voided receipt and include the replacement receipt, respondent included both amounts in her determination of petitioner's income. Since the initial receipt was voided and replaced by the second one, we conclude that respondent erroneously added the amount of the first receipt to the second receipt to overstate petitioner's income in the amount of $ 5,560.22. The second instance referred to by petitioner shows that respondent erroneously included a bill for $ 9,215 in petitioner's income rather than a receipt for $ 8,496. It is clear from the record that the amount of $ 9,215 was petitioner's initial estimate of a portion of the cost of a cabin he was constructing for Mr. Karoyli. However, the facts demonstrate that this amount was subsequently adjusted downward to $ 8,496 which amount was actually received by petitioner. Respondent *282 included the initial amount in petitioner's income, disregarding the actual cost later actually paid to petitioner, and accordingly, we conclude that respondent overstated petitioner's income by $ 719 in this instance. The final error referred to by petitioner shows that respondent included a partial receipt in his income which was included as part of a larger subsequent receipt. Petitioner built an outdoor deck for Mr. Karoyli for which a total of $ 1,037 was charged and paid. Initially, petitioner billed Mr. Karoyli for 50 percent of the deck at $ 537. Subsequently, petitioner billed Mr. Karoyli for the whole deck at a cost of $ 1,037. The initial bill was never paid and the amount thereof was included in the final receipt. Respondent included both the $ 537 bill and the $ 1,037 receipt in petitioner's income. Thus, we conclude that respondent overstated petitioner's income by $ 537 in this instance. Altogether, petitioner has demonstrated that respondent overstated his unreported income for 1986 by $ 6,816.22. Since the total unreported income for 1986 in dispute is $ 7,116.22, we sustain respondent's determination as to the remaining $ 300. For 1987, respondent determined *283 that petitioner had unreported income of $ 350 and that petitioner's net operating loss carryback from 1987 to 1986 should be reduced accordingly. Petitioner contends that he did not have any unreported income for 1987 as indicated by his records and that respondent has failed to provide any basis for her claim that he had unreported income of $ 350. At the outset, we note that 1987 is not a year over which we have jurisdiction to determine petitioner's tax liability since no deficiency for that year is before us. However, we may compute the correct amount of taxable income or net operating loss for a year not in issue as a preliminary step in our determination of the correct amount of net operating loss carryover or carryback to a year in issue. Sec. 6214(b); Hill v. Commissioner, 95 T.C. 437, 439-440 (1990); Calumet Industries, Inc. v. Commissioner, 95 T.C. 257, 275 (1990). We conclude that petitioner has demonstrated that he did not have $ 350 of unreported income for 1987. Petitioner presented books and records for 1987 which showed that he reported his income for 1987 accurately. Respondent's only support for her claim that petitioner *284 had unreported income of $ 350 in 1987 is the bare assertion to that effect. In light of the evidence presented by petitioner, we conclude that petitioner did not have $ 350 of unreported income for 1987 and that his net operating loss carryback from 1987 to 1986 should not be reduced in that amount. 3 and 4. Petitioner's tax home during 1986 and 1987
Respondent determined that petitioner was not entitled to travel and entertainment deductions claimed with respect to expenses incurred by him for travel to Huntsville, Texas. Respondent also determined that petitioner was not entitled to a portion of the expenses he claimed for car and truck expenses, insurance expenses, and repair expenses. Respondent based her disallowance of the aforementioned expenses upon her determination that Huntsville was petitioner's tax home during 1986 and 1987 and that the expenses disallowed were incurred by petitioner as a result of his travel to and from Huntsville which was personal in nature. Deductions are strictly a matter of legislative grace, and petitioner bears the burden of proving his entitlement to any deduction claimed. Rule 142(a); New Colonial Ice Co. v. Helvering, 292 U.S. 435, 440 (1934). *285 Section 262 provides generally that no deduction will be allowed for personal, living, or family expenses. However, where employment which is temporary gives rise to certain expenses which would otherwise be personal, such expenses may be considered as business expenses and not personal expenses. Peurifoy v. Commissioner, 358 U.S. 59 (1958). Section 162(a)(2) generally provides for the deduction of all ordinary and necessary expenses paid or incurred in carrying on a trade or business, including expenses for travel, meals, and lodging while away from home in pursuit of a trade or business. Our determination concerning the deductibility of petitioner's expenses turns upon whether petitioner incurred the expenses while he was away from home. A taxpayer's home, within the meaning of section 162(a)(2), is generally the area or vicinity of the taxpayer's principal place of employment rather than the location of his family residence. Mitchell v. Commissioner, 74 T.C. 578, 581 (1980). An exception to this rule exists where the taxpayer's employment in a particular location is temporary, as opposed to indefinite or indeterminate. When a taxpayer *286 undertakes employment which is merely temporary, the taxpayer may be considered to be away from home. Kroll v. Commissioner, 49 T.C. 557, 562 (1968). In such a case, it would not be reasonable to expect the taxpayer to pick up and move his residence under the circumstances. Consequently, the expenses incurred on account of the place of temporary employment will be deductible. Steinhort v. Commissioner, 335 F.2d 496, 504 (5th Cir. 1964), affg. T.C. Memo. 1962-233. The purpose behind the deduction for expenses incurred while a taxpayer is away from home is to ease the burden upon the taxpayer who, because of the exigencies of his trade or business, incurs additional and duplicative living expenses. Rosenspan v. United States, 438 F.2d 905, 912 (2d Cir. 1971); Tucker v. Commissioner, 55 T.C. 783, 786 (1971). Employment is considered temporary when it is expected that it will last for only a short period of time. Norwood v. Commissioner, 66 T.C. 467, 469 (1976). Employment is indefinite in nature when the prospect is that the work will continue for an indeterminate *287 and substantially long period of time. Boone v. United States, 482 F.2d 417, 419 (5th Cir. 1973). Employment which is originally temporary may become indefinite due to changed circumstances, or simply from the passage of time. Garlock v. Commissioner, 34 T.C. 611, 615-616 (1960). The question of whether employment is of a temporary or indefinite nature is essentially a factual one. No single element is determinative, and there are no rules of thumb, durational or otherwise. Peurifoy v. Commissioner, supra at 60-61. We conclude that each period for which petitioner was employed in Huntsville during 1986 and 1987 constituted employment of a temporary nature. During 1986 and 1987 petitioner completed the construction of several cabins, including furnishings, as well as various other projects, most of which were for a gymnastics center owned and operated by Mr. Karoyli. Petitioner's multiple employment relationships with Mr. Karoyli were negotiated at arm's length and were based upon a series of independent contracts, each of which concerned a separate project and was open to bidding by other parties in addition *288 to petitioner. After the completion of a contracted for project, petitioner had no expectation or guarantee that he would receive future work from Mr. Karoyli. Petitioner's employment with Mr. Karoyli was dependent on Mr. Karoyli's need for construction and petitioner's successful bid on the proposed project. While working on a project at the Karoyli facility, petitioner would stay 10-15 miles away in Huntsville which was the closest town to the site. That the Huntsville area was a temporary place of employment for petitioner is illustrated, in part, by the manner in which petitioner maintained his contacts with Huntsville. Petitioner was only present in Huntsville over the course of a construction project during which he would live out of a hotel until the project was completed. Petitioner never established a permanent relationship or contact of any sort with Huntsville. Before petitioner ever worked on a project for Mr. Karoyli in Huntsville, he lived and worked in Smithville, Texas. In addition, petitioner always maintained a residence in Smithville during the years in issue. When not working on a project for Mr. Karoyli, petitioner either resided in an apartment or lived *289 with his grandmother in Smithville. Petitioner returned to Smithville between all of the Karoyli projects and during most weekends during the term of a project. That petitioner's home was Smithville is further evidenced by the presence of his furniture manufacturing business there where he worked and which he operated at all times relevant herein. The furniture which petitioner produced for Mr. Karoyli was manufactured at his Smithville business. Based upon our review of the record as a whole, we conclude that petitioner's employment in the Huntsville area was temporary in nature. Each project which petitioner worked on in Huntsville was of a short duration and did not carry any expectation of continued employment. Petitioner's temporary stays in Huntsville resulted from his successful bidding and were consistent with the general nature of the construction business. In addition, much of the expenses which petitioner incurred as a result of his stay in Huntsville were duplicative of expenses he had in Smithville. Accordingly, we conclude that petitioner's tax home was in Smithville during 1986 and 1987 and that the expenses petitioner incurred in 1986 due to his temporary employment *290 in Huntsville are allowable and the expenses incurred in 1987 were properly included in the net operating loss carryback from 1987 to 1986. 5. Additions to tax for negligence
Respondent determined that petitioner was liable for the additions to tax for negligence or disregard of rules or regulations pursuant to section 6653(a)(1)(A) and (B) for 1986. Negligence under section 6653(a) is the lack of due care or the failure to do what a reasonable and ordinarily prudent person would do under the circumstances. Neely v. Commissioner, 85 T.C. 934, 947 (1985). Petitioner has the burden of proof on this issue. Bixby v. Commissioner, 58 T.C. 757, 791 (1972). We conclude that petitioner is not liable for the negligence addition to tax. Petitioner presented us with books and records as well as supporting explanations which were not contradicted and which we find to be wholly credible. While petitioner appears to have made a few errors, we find that petitioner exercised due care and that the errors were not the result of negligence on petitioner's part. 6. Addition to tax for substantial understatement of tax
Section 6661(a) provides *291 for an addition to tax if there is a substantial understatement of income tax. The amount of the section 6661 addition to tax for additions assessed after October 21, 1986, is equal to 25 percent of the amount of any underpayment attributable to the substantial understatement. Omnibus Budget Reconciliation Act of 1986, Pub. L. 99-509, sec. 8002, 100 Stat. 1951; Pallottini v. Commissioner, 90 T.C. 498, 501-502 (1988). An understatement is substantial if it exceeds the greater of 10 percent of the tax required to be shown on the return or $ 5,000. Sec. 6661(b)(1)(A). The understatement is reduced if it is based on substantial authority or is adequately disclosed on the return or in a statement attached to the return. Sec. 6661(b)(2)(A). At trial petitioner did not contend that he had substantial authority for the income which we have determined was unreported. Thus, if the Rule 155 computation reflects a substantial understatement within the meaning of section 6661(b)(1), the 25-percent addition provided by section 6661(a) will apply. 7. Self-Employment tax
Respondent determined that petitioner was liable for self-employment tax due to the adjustments *292 which were made to his income. While many of respondent's adjustments have been eliminated or modified, petitioner's self-employment income has still been increased to a degree. Accordingly, petitioner's liability for self-employment tax based upon his increased income will be determined by the Rule 155 computation. Because of the foregoing, Decision will be entered under Rule 155. Footnotes
1. All section references are to the Internal Revenue Code in effect for the year in issue. All Rule references are to the Tax Court Rules of Practice and Procedure.↩