T.C. Memo. 1998-238


UNITED STATES TAX COURT


NICHOLAS M. ROMER, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 8352-97.                    Filed July 2, 1998.


<u>Howard S. Kleyman</u>, for petitioner.

<u>Tracy A. Martinez</u> and <u>Jonathan Decatorsmith</u>, for respondent.


MEMORANDUM OPINION


DINAN, <u>Special Trial Judge</u>:   This case was heard pursuant
to the provisions of section 7443A(b)(3) and Rules 180, 181, and
182.[1]

---

[1]    Unless otherwise indicated, all section references are
to the Internal Revenue Code in effect for the taxable year in
issue.  All Rule references are to the Tax Court Rules of
                                        (continued...)

Respondent determined a deficiency in petitioner's Federal income tax for 1993 in the amount of $5,398.

The issues for decision are: (1) Whether petitioner is entitled to exclude from gross income certain per diem payments which he received during 1993; (2) whether petitioner's horse selling and leasing activity was an activity not engaged in for profit within the meaning of section 183; (3) whether certain expenses paid by petitioner in connection with his aviation activity are deductible as ordinary and necessary business expenses; and (4) whether petitioner is entitled to Schedule A itemized deductions which exceed his claimed standard deduction.

Some of the facts have been stipulated and are so found. The stipulations of fact and attached exhibits are incorporated herein by this reference. Petitioner claimed he resided in Antioch, Tennessee, on the date the petition was filed in this case.

Petitioner has been a certified public accountant since 1972. He founded an accounting firm in Minneapolis, Minnesota, in 1974 which, sometime prior to 1993, was incorporated under the laws of Minnesota as a professional corporation called Romer & Company, P.C. (Romer). During 1993, petitioner was an 8-percent shareholder and the president of Romer. Derf Bistodeau, Romer's vice president, owned the remaining 92 percent of Romer's shares.

[1](...continued)
Practice and Procedure.

Prior to 1991, petitioner resided at 2100 Pillsbury Avenue in Minneapolis and worked as an accountant out of Romer's office in Minneapolis. In March 1991, he began working as a pilot for American Airlines, Inc. in Nashville, Tennessee. He established his residence in Antioch, Tennessee, located near Nashville, shortly after he began working as a pilot. He took steps to sell his former residence in Minneapolis including the execution of a sales contract.

In January 1993, respondent's Criminal Investigation Division (CID) initiated an investigation into Romer's return preparation practice and seized all of Romer's clients' files. With the height of the tax season approaching and their files in CID's possession, petitioner and Mr. Bistodeau were not certain that Romer would survive the year. After considering the severity of the situation, it was agreed that petitioner would begin to regularly travel to Minneapolis from Nashville to help Romer represent itself in the investigation and to reassure its clients. It was also agreed that petitioner would not be paid any salary for his services until after it was determined that Romer would survive respondent's investigation. It was arranged, however, for petitioner to be reimbursed for his traveling expenses incurred in connection with working for Romer in Minneapolis at the Federal standard per diem rate for lodging, meals, and incidental expenses of $85 per day. At that time, petitioner also abandoned the sale of his former Minneapolis

residence. He eventually sold the residence to a different buyer in 1994.

As a result of the foregoing events, petitioner divided his time during 1993 between Nashville and Minneapolis. He reduced his pilot rank from captain to first officer co-pilot and took a reduction in salary which enabled him to travel more easily to Minneapolis. His regular flight schedule during 1993 involved a short flight from Nashville to Paducah, Kentucky, in the evening, staying overnight in Paducah at the airline's expense, and a short flight back to Nashville the following morning. He would repeat this round trip to and from Paducah three evenings and three mornings in a row. On the last morning of his weekly flight schedule, petitioner would take a 3-hour flight to Minneapolis where he would work for 2 or 3 days for Romer.

During his spare time in Tennessee, petitioner spent a few hours per week training a horse. He had played polo as a hobby for many years prior to his relocation to Nashville and believed that several wealthy polo players in the Nashville area would be willing to pay at least $40,000 for a properly trained horse. Petitioner had a horse shipped to Nashville from Minnesota in January 1993. He did not attempt to train this horse but he did lease it to other individuals. In May 1993, he purchased a second horse for $1,300 which he attempted to train as a polo horse. This horse did not prove to have the athletic ability required to present it for sale. Petitioner's records show that

he abandoned the activity in September 1993.  He has not leased or trained any horses since that time.

The first issue for decision is whether petitioner is entitled to exclude from his gross income the per diem payments that he received from Romer during 1993.

Petitioner submitted three invoices to Romer on which he claimed that he worked in Minnesota for four days in mid-January 1993 and 2-1/2 days per week for the following 49 weeks for a total of 126-1/2 days for the year.  Romer issued three checks to him during 1993 in the total amount of $10,752.  Petitioner did not report the $10,752 on his 1993 return.  In the statutory notice of deficiency, respondent determined that the payments must be included in gross income.

Section 61(a) includes in gross income all income from whatever source derived.  Commissioner v. Glenshaw Glass Co., 348 U.S. 426 (1955).  However, section 1.62-2(c)(4), Income Tax Regs., provides:

> Amounts treated as paid under an accountable plan are excluded from the employee's gross income, are not reported as wages or other compensation on the employee's Form W-2, and are exempt from the withholding and payment of employment taxes * * * [FICA, FUTA, RRTA, RURT, and income tax]. * * *

Section 1.62-2(c)(2)(i), Income Tax Regs., provides that in order for amounts paid under an arrangement to be treated as paid under an accountable plan the arrangement must satisfy a business connection requirement, a substantiation requirement, and a

return of excess requirement.  Sec. 1.62-2(d)-(f), Income Tax Regs.  If an arrangement meets these three requirements, all amounts paid under the arrangement are, in general, treated as paid under an accountable plan and are excluded from the employee's gross income.

Respondent conceded on brief that petitioner was an employee of Romer during 1993.  Respondent argues, however, that the arrangement does not satisfy the business connection and the substantiation requirements set out in section 1.62-2(d), Income Tax Regs., and section 1.62-2(e), Income Tax Regs., respectively.

Business Connection Requirement

Section 1.62-2(d)(1), Income Tax Regs., provides that an arrangement satisfies the business connection requirement if it:

> provides advances, allowances (including per diem allowances * * *), or reimbursements only for business expenses that are allowable as deductions by Part VI (section 161 and the following), subchapter B, chapter 1 of the Code, and that are paid or incurred by the employee in connection with the performance of services as an employee of the employer.  * * *

Section 162(a) allows a deduction for the ordinary and necessary expenses paid or incurred during the taxable year in carrying on a trade or business, including the trade or business of being an employee.  Commissioner v. Flowers, 326 U.S. 465 (1946).  Section 162(a)(2) allows a deduction for traveling expenses if the expenses are:  (1) Ordinary and necessary; (2) paid or incurred while away from home; and (3) paid or incurred in pursuit of a trade or business.  Bochner v. Commissioner, 67

T.C. 824, 827 (1977).  The purpose behind the deduction for expenses paid or incurred while a taxpayer is away from home is to ease the burden on the taxpayer who incurs additional and duplicate living expenses.  Rosenspan v. United States, 438 F.2d 905, 912 (2d Cir. 1971); Tucker v. Commissioner, 55 T.C. 783, 786 (1971).

Based on the record, we find that the arrangement in issue meets the business connection requirement.  The arrangement provided a per diem allowance for petitioner's ordinary and necessary traveling expenses incurred while away from his Tennessee residence, which are allowed as a deduction under section 162(a)(2).  The amounts paid under the arrangement were directly connected to petitioner's trade or business as Romer's employee because he received the per diem allowance only for the days on which he worked for Romer in Minneapolis.

Substantiation Requirement

Section 1.62-2(e)(1), Income Tax Regs., provides that an arrangement satisfies the substantiation requirement if it requires each business expense to be substantiated to the employer within a reasonable period of time.  In the case of business expenses governed by section 274(d), section 1.62-2(e)(2), Income Tax Regs., provides that an arrangement meets the substantiation requirement if information sufficient to satisfy the substantiation requirements of section 274(d) and the regulations thereunder is submitted to the employer.

Section 274(d)(1) provides that no deduction is allowable under sections 162 or 212 for any traveling expenses, including meals and lodging while away from home, unless the taxpayer complies with strict substantiation rules. In particular, the taxpayer must substantiate the amount, time, place, and business purpose of the expenses by adequate records or by sufficient evidence corroborating his own statement. Sec. 274(d); sec. 1.274-5T(b)(2), (c), Temporary Income Tax Regs., 50 Fed. Reg. 46014, 46016 (Nov. 6, 1985).

Pursuant to his authority provided for in section 1.274(d)-1, Income Tax Regs., the Commissioner issued Rev. Proc. 92-17, 1992-1 C.B. 679, and Rev. Proc. 93-21, 1993-1 C.B. 529, which provide rules under which the amount of ordinary and necessary business expenses of an employee for lodging, meal, and/or incidental expenses will be deemed substantiated when an employer provides a per diem allowance under a reimbursement or other expenses allowance arrangement to pay for such expenses. Section 3.01 of each of the revenue procedures defines a "per diem allowance" as:

> a payment under a reimbursement or other expense
> allowance arrangement that meets the requirements
> specified in section 1.62-2(c)(1) of the regulations
> and that is
>
> > (1) paid with respect to ordinary and
> > necessary business expenses incurred, or
> > which the * * * [employer] reasonably
> > anticipates will be incurred, by an employee
> > for lodging, meal, and/or incidental expenses
> > for travel away from home in connection with

the performance of services as an employee of
the employer,

(2) reasonably calculated not to exceed
the amount of the expenses or the anticipated
expenses, and

(3) paid at the applicable Federal per
diem rate, a flat rate or stated schedule, or
in accordance with any other Service-
specified rate or schedule.  [Rev. Proc.
93-21, 1993-1 C.B. at 530; Rev. Proc. 92-17,
1992-1 C.B. at 680.]

We find that the arrangement in this case meets the
definition of "per diem allowance" provided in the Commissioner's
revenue procedures.  It was reasonable for Romer to anticipate
that petitioner would incur lodging, meal, and incidental
expenses as its employee while he was away from his Tennessee
residence.  It was also reasonable for Romer to estimate that the
applicable Federal per diem rate for Minneapolis would not exceed
petitioner's anticipated expenses.  We find that the amount of
petitioner's traveling expenses is deemed substantiated under the
per diem allowance method.[2]

With respect to the time, place, and business purpose of
traveling expenses, section 1.274-5T(c)(1), Temporary Income Tax
Regs., 50 Fed. Reg. 46016 (Nov. 6, 1985), generally provides that
a taxpayer must substantiate these elements of an expenditure by
adequate records or by sufficient evidence corroborating his own

_____

[2]      Since the arrangement provides for a per diem
allowance, it is treated as satisfying the sec. 1.62-2(f), Income
Tax Regs., return of excess requirement for an accountable plan.
See sec. 1.62-2(f)(2), Income Tax Regs.

statement. In addition to petitioner's and Mr. Bistodeau's testimony, the record contains a handwritten log of petitioner's activities with respect to respondent's criminal investigation of Romer and with respect to Romer's clients. In addition, Karen Coon, a certified public accountant who was associated with Romer as an independent contractor, testified that petitioner generally worked in the Minneapolis office 2 or 3 days each week during 1993. She also verified that he posted a monthly schedule in the Minneapolis office which showed when he would be working in the office. We find that this corroborative evidence is sufficient to establish the time, place, and business purpose elements of petitioner's traveling expenses and conclude that the arrangement satisfies the section 1.62-2(e), Income Tax Regs., substantiation requirement.

We have also considered respondent's broad assertion that petitioner and Mr. Bistodeau conspired to label petitioner's compensation from Romer as reimbursements under the arrangement in order for petitioner to avoid income tax liability and for Romer to avoid employment tax liability on the amount paid to him during 1993. Based on our review of the record, we find that a bona fide arrangement existed between petitioner and Romer during 1993. We reject respondent's conspiracy theory because he offered absolutely no evidence in support of the alleged tax avoidance scheme.

We conclude that the amounts paid under the arrangement between petitioner and Romer are properly treated as paid under an accountable plan. Accordingly, we hold that petitioner is entitled to exclude from his gross income the $10,752 in per diem payments which he received from Romer during 1993.

The second issue for decision is whether petitioner's horse selling and leasing activity was an activity not engaged in for profit within the meaning of section 183.

On a Schedule C attached to his 1993 return, petitioner reported gross income from his horse selling and leasing activity in the amount of $600, claimed expenses in the total amount of $6,136, and claimed a net loss in the amount of $5,536. In the statutory notice of deficiency, respondent disallowed the net loss on the ground that the activity was not engaged in for profit.

Section 183(a) disallows any deduction attributable to an activity not engaged in for profit except as provided in section 183(b). For purposes of section 183, the term "activity not engaged in for profit" means any activity other than one with respect to which deductions are allowable for the taxable year under section 162 or under paragraph (1) or (2) of section 212. Sec. 183(c).

Section 162(a) provides for the deduction of all ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business. Where an activity does not

constitute a trade or business, section 212 allows as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year for the production or collection of income, or the management, conservation, or maintenance of property held for the production of income. Sec. 212(1) and (2).

Whether a taxpayer engaged in an activity with the objective of making a profit is a question of fact. Dreicer v. Commissioner, 78 T.C. 642, 644-645 (1982), affd. without opinion 702 F.2d 1205 (D.C. Cir. 1983); sec. 1.183-2(a), Income Tax Regs. While a reasonable expectation of profit is not required, the taxpayer's profit objective must be bona fide. Taube v. Commissioner, 88 T.C. 464, 478-479 (1987). In making this determination, the Court gives more weight to objective facts than to a taxpayer's mere statement of intent. Dreicer v. Commissioner, supra at 645; sec. 1.183-2(a), Income Tax Regs.

Section 1.183-2(b), Income Tax Regs., provides a nonexclusive list of factors to be considered in deciding whether an activity is engaged in for profit. These factors include: (1) The manner in which the taxpayer carried on the activity; (2) the expertise of the taxpayer or his advisers; (3) the time and effort expended by the taxpayer in carrying on the activity; (4) the expectation that the assets used in the activity may appreciate in value; (5) the success of the taxpayer in carrying on other similar or dissimilar activities; (6) the taxpayer's history of income or losses with respect to the activity; (7) the

amount of occasional profits, if any, which are earned; (8) the financial status of the taxpayer; and (9) whether elements of personal pleasure or recreation are involved.

After considering the above factors, we find that petitioner has not proved that he was engaged in his horse selling and leasing activity with the requisite profit objective necessary to support deductions under sections 162 or 212(1) and (2).  We are not convinced that petitioner's experience in training horses ever involved more than his use of them for his own personal recreation.  He admits that he spent only a few hours each week on this activity and that part of this time was spent demonstrating his competence as a polo player to the members of the Nashville Polo Club.  Although he testified that his intention was to make a profit by selling horses, we find that the objective facts in this case show that he never made the kind of commitment to the activity that would have given him a reasonable chance to make a profit.

We hold that petitioner is not entitled to a business loss deduction with respect to his horse selling and leasing activity. Respondent's determination on this issue is sustained.

The third issue for decision is whether expenses paid by petitioner in connection with his aviation activity are deductible as ordinary and necessary business expenses.

On a single Schedule C attached to his 1993 return, petitioner labeled his various aviation activities, other than

his piloting for American Eagle, as "PILOT/FLIGHT INSTRUCTOR/ANTIQUE AIRCRAFT EXPERT/A/C DEALER". He reported gross receipts in the amount of $3,394 and claimed the following expenses:

| | |
|---|---:|
| Car & truck expenses | $455 |
| Legal & professional services | 1,235 |
| Rent | 780 |
| Travel | 260 |
| Dues & subscriptions | 556 |
| Books | 25 |
| Total | $3,311 |

Respondent concedes that petitioner has substantiated all of the claimed expenses but did not allow deductions for the car and truck expenses, rent, travel, and dues and subscriptions. Respondent's position is that the disallowed expenses are nondeductible personal expenses which are not related to the gross receipts reported on the Schedule C.

Petitioner admits that the $3,394 which he reported on the Schedule C was received by him for commercial flying services which he performed for a company called Hills-Gilbertson prior to 1993. He also admits that the disallowed expenses were not related to the services he provided to Hills-Gilbertson.

The disallowed expenses were related, however, to petitioner's involvement with an organization called Confederate Air Force, Inc. (CAF) which is dedicated to the preservation of World War II combat aircraft. Based on the record, we find that his involvement with CAF during 1993 did not constitute the type of activity that entitles him to deductions for his claimed

expenses under sections 162 or 212. Furthermore, we reject his alternate argument that the disallowed expenses are deductible as charitable contributions. We are not convinced that his activity benefited CAF in any way. The record does not show that he participated in any of CAF's air shows. Rather, the record shows that during 1993 petitioner was paying CAF for his use of its aircraft in order to learn how to fly World War II planes. We conclude that these expenses were personal in nature and are not deductible pursuant to section 262. We sustain respondent's determination on this issue.

The fourth issue for decision is whether petitioner is entitled to Schedule A itemized deductions which exceed his claimed standard deduction for 1993.

Petitioner prepared his own return for 1993 and claimed a standard deduction in the amount of $3,700 as an individual with a filing status of single. Petitioner now contends that he is entitled to itemized deductions in the total amount of $13,078. After carefully reviewing the record, we find that petitioner is entitled to the following itemized deductions:

| | | |
|---|---:|---:|
| Minnesota individual income taxes | $3,000 | |
| Real estate taxes | 1,348 | |
| Personal property taxes | 121 | |
| Total taxes paid | | $4,469 |
| | | |
| Computer donated to CAF | $1,000 | |
| Sponsorship of CAF's "Miss Mitchell" | 175 | |
| Total gifts to charity | | 1,175 |
| Total itemized deductions | | $5,644 |

Although we also find that petitioner paid for certain deductible employee business expenses in connection with his position at American Airlines, Inc., the total amount of such deductible expenses does not exceed 2 percent of his adjusted gross income, as determined in accordance with our holdings on the other issues in this case.  Therefore, petitioner is not entitled to a deduction for such expenses.  Sec. 67(a).

Accordingly, we hold that petitioner is entitled to itemized deductions for 1993 in the total amount of $5,644.

To reflect the foregoing,

Decision will be entered

under Rule 155.