STEPHEN AND LAURIE WIRT, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Wirt v. Commissioner
Docket No. 32485-85.
United States Tax Court
T.C. Memo 1988-329; 1988 Tax Ct. Memo LEXIS 357; 55 T.C.M. (CCH) 1369; T.C.M. (RIA) 88329; July 27, 1988
Stephen Wirt, pro se. Kathey Shaw and Shirley M. Francis, for the respondent. DRENNEN
MEMORANDUM *358 FINDINGS OF FACT AND OPINION DRENNEN, Judge: Respondent determined a deficiency in petitioners' Federal income tax for taxable year 1982 in the amount of $ 2,539, plus an addition to tax pursuant to section 6653(a)(1) [1] in the amount of $ 127, plus an addition to tax pursuant to section 6653(a)(2) to be computed on the entire underpayment. After concessions [2] the issues for decision are: (1) whether petitioners are entitled to deduct travel expenses, including transportation costs and meals, which petitioner Stephen Wirt incurred by going to and from his job as a cropduster; (2) if petitioners are entitled to deduct such travel expenses, whether said expenses have been properly substantiated; and (3) whether petitioners are liable for additions to tax pursuant to sections 6653(a)(1) and 6653(a)(2) for negligence or intentional disregard of rules and regulations. *359 FINDINGS OF FACT Some of the facts have been stipulated. The stipulation of facts and exhibits attached thereto are incorporated herein by this reference. During taxable year 1982, and when they filed their petition in this case, petitioners resided in Kittitas, Washington (hereinafter "Kittitas"). Kittitas is located approximately five miles east of Ellensburg, Washington (hereinafter "Ellensburg"). During taxable years 1980 and 1981, petitioner Stephen Wirt (hereinafter "Stephen"), was employed as a cropdusting pilot for Mid-State Aviation (hereinafter "Mid-State"), which was located in the Ellensburg area. In early 1982 Stephen's employment with Mid-State was terminated. Sometime prior to his termination, Stephen approached Mid-State's owner [3] about the possibility of buying Mid-State. [4] Mid-State's owner was killed on or about May 18, 1980 in an airplane accident and the owner's son, who inherited Mid-State, decided not to sell the business and told Stephen that his services were no longer required. In February 1982 Stephen became employed by the Quincy Flying Service (hereinafter "Quincy Flying"), which was located at or near Quincy, Washington (hereinafter "Quincy"). *360 Quincy is located approximately 45 to 55 miles from Kittitas. Stephen worked for Quincy for at least a portion of the taxable years 1982, 1983 and 1984. Petitioner continued to live at his home in Kittitas throughout this period. Stephen commuted daily by automobile to and from his job at Quincy Flying which took approximately one hour each way. Stephen had a choice of either commuting to and from the Quincy area or moving to that area. During taxable years 1985 and 1986, Stephen was employed as a cropdusting pilot by the Stephen Spraying Service (hereinafter "Stephen Spraying"), which is located in or near Quincy. From taxable year 1980 through the time of trial of this case, petitioner, Laurie Wirt (hereinafter "Laurie"), was employed full-time as a grocery store clerk by Meads Mark-it Foods in Ellensburg. During taxable year 1982 petitioners owned [5] a home in Kittitas. During this time, Stephen's father, Don *361 Wirt, lived approximately seven miles from petitioners. Don Wirt operated a service station in Kittitas where Stephen purchased gasoline and other automotive supplies. During 1982, Quincy Flying dusted crops from February through September. Stephen's employment with Quincy Flying began February 23, 1982 and ended on or about September 15, 1982. Because crop dusting is more difficult to perform during the hottest hours of the day Stephen usually worked from approximately 5:00 a.m. until noon, and again that day from 5:00 p.m. until dusk. During this time, Stephen usually ate and napped in his employer's office between his morning and late afternoon shifts. Stephen then returned to his home in Kittitas after each day's work. Petitioners incurred no lodging expenses in Quincy. During taxable year 1982, Quincy Flying employed two cropdusting pilots besides Stephen; one of whom it had employed for seven years and the other of whom it had employed for 14 years. On their 1982 Federal income tax return, petitioners claimed travel and entertainment expenses in the amount of $ 571 on Schedule *362 C for Stephen's alleged hay loading business. [6] Petitioners also deducted as unreimbursed employee business expenses $ 1,315 for meals away from home and $ 5,314 for car expenses, allegedly incurred in connection with Stephen's employment with Quincy Flying. In 1975 petitioner purchased a 1973 model Jeep, which he usually used to commute to and from his job with Quincy Flying in 1982. Petitioner did not keep a log book or diary of the business use of the Jeep, and made no allocation for personal use of the vehicle during 1982. On their 1982 return petitioners claimed automobile mileage in connection with Stephen's job with Quincy Flying of 21,413 miles. In doing so they admittedly over estimated the mileage. At trial Stephen estimated that he drove 16,500 miles in 1982 in connection with his job with Quincy Flying, based on 25 work days per month for six months with round trip mileage of 110 miles. A portion of the auto expenses deducted by petitioners for 1982 was the allegedly full cost of rebuilding the engine of the 1973 Jeep in the amount of $ 1,547.68 and the alleged cost of a new cloth top for the Jeep *363 in the amount of $ 1, 065.69. Petitioners produced a large number of charge account receipts to substantiate their fuel and oil expenses for travelling to and from Stephen's job at Quincy. Most of the receipts show Stephen's father, Don Wirt, as the vendor although some of them were not imprinted with vendor's name. The receipts did not contain notations as to the business or personal nature of the expenses. OPINION Petitioners maintain that in 1982 their home was in Kittitas, and that pursuant to section 162(a)(2) they may deduct expenses Stephen incurred for travelling to and from Quincy in connection with his employment with Quincy Flying. In the Notice of Deficiency, respondent determined that petitioners are not entitled to the deductions claimed as employee business expenses because "it has not been established that any amount was incurred for ordinary and necessary employee business expenses not reimbursed or reimbursable by your employers." At the trial and on brief respondent contends that the expenses were personal expenses not incurred while Stephen was "away from home in the pursuit of a trade or business." [7]
*364 The burden of proof is on petitioners to establish entitlement to the deductions which they seek. ; Rule 142(a). Section 262 [8] states that personal expenses are not deductible, unless the contrary is "expressly provided" in some other Code section. Section 162(a)(2) [9] expressly permits a taxpayer to deduct travelling expenses, including amounts expended for meals and lodging, which might otherwise be personal expenses, if incurred "away from home in the pursuit of a trade or business." This section is intended to provide relief to the taxpayer who incurs "substantial continuing expenses" of a home which are duplicated by living expenses incurred while traveling away from home on business. . To qualify for this deduction, all of the following conditions must be met: (1) The expense is a traveling expense (this includes such items as transportation fares and food and lodging expenses incurred when traveling); (2) The expense is incurred while "away from home;" and (3) The expense is an ordinary and necessary business expense incurred in pursuit of *365 a trade or business. . See also . Respondent does not dispute that Stephen's expenses were "traveling expenses" and were "incurred in pursuit of business." Instead, respondent argues that Stephen's expenses were not incurred while away from home. This Court has held that as a general rule "home," as used in section 162(a)(2), means the vicinity of the taxpayer's principal place of employment and not *366 where his or her personal residence is located. E.g., ; , affd. . An employee without a principal place of business may treat a permanent place of residence at which he incurs substantial continuing living expenses as his tax home. . However, where the taxpayer has neither a principal place of business nor a permanent residence, he has no tax home from which he can be away. His home is wherever he happens to be. , affg. a Memorandum Opinion of this Court; , cert. denied ; . A taxpayer's personal residence may be his "tax home" if his principal place of business away from his residence is "temporary" rather than "indefinite." See . However, *367 simply because a taxpayer takes a job of uncertain duration in another location and chooses to live in his original residence does not mean that the original residence continues to be his home for purposes of section 162. There must be some business, as opposed to personal, reason for the taxpayer maintaining the original home for it to qualify as such under section 162. See . [10] The exception provided by section 162 allowing deduction of certain personal living expenses was to avoid, in effect, taxing duplicate living expenses incurred as an exigency of the taxpayer's business. But if the duplication of expenses was not required by the exigency of the taxpayer's business, but by his personal preferences, the exception does not apply. After reviewing the evidence in this case and Stephen's testimony, we conclude that petitioners were not entitled to deductions under section 162 for travel expenses incurred by Stephen while *368 travelling to and from his employment with Quincy Flying. Stephen testified that after his employment with Mid-State ended his prospects for employment as a cropduster in Kittitas were bleak. For this reason he sought and obtained employment in Quincy with Quincy Flying. Although arguably Stephen's employment with Quincy Flying was for a limited duration, it can just as forcibly be argued that it was for an indefinite duration. Petitioners argue that the prospect of buying the cropdusting business of Mid-State was sufficient business justification to remain in Kittitas. However, Stephen testified that when his employment with Mid-State ended he was told by the new owner that he was not going to sell the business to Stephen and that he had no further need for Stephen's services. There is no evidence that the owner's attitude changed in 1982 or thereafter. The prospects for other crop dusting employment in Kittitas was not promising and petitioner continued to fly for Quincy and others in that area for three or four years thereafter. We believe Stephen's own testimony underscores that personal considerations, not business exigencies, motivated petitioners not to relocate their *369 residence from Kittitas to Quincy. Stephen testified that while he hoped to return to work in Kittitas if the business conditions there changed, there was no business reason for him not to move his residence from Kittitas to Quincy except that he owned a home in Kittitas and it was cheaper for him to commute to Quincy than to move there. In addition his wife had worked in Ellensburg for a number of years and was well established there and his father also lived in that area. While Stephen emphasized that there was no certainty that his job at Quincy would last more than one season he gave no reason for thinking that it would not or for thinking that a job would open up for him in Kittitas. As is apparent from Stephen's testimony, petitioners' decision to remain in Kittitas was motivated, not by any business requirement, but rather by the financial burden of moving to Stephen's new area of employment. Quite simply, petitioners determined that it would be less costly to remain in Kittitas and commute to Quincy than to move their residence to Quincy. Stephen's commuting expenses are personal in nature, and are not deductible under section 162(a)(2). Having concluded that petitioners *370 are not entitled to deduct travel expenses that Stephen incurred in commuting to his job, we need not address whether said expenses have been properly substantiated. The final issues for decision are whether petitioners are liable for additions to tax pursuant to section 6653(a)(1) and section 6653(1)(2) for negligence or intentional disregard of rules and regulations. Section 6653(a)(1) states that if any part of an underpayment is due to negligence or intentional disregard of rules and regulations there shall be added to the tax an amount equal to five percent of the entire underpayment.[11] Petitioners have conceded that they are liable for the additions to tax under section 6653(a)(1) for the parts of the deficiency relating to Schedule C expenses and investment tax credit. Because petitioners have conceded that part of the underpayment is due to negligence or intentional disregard of rules and regulations, the five percent addition to tax provided in section 6653(a)(1) therein applies to the entire underpayment regardless of whether the balance of the underpayment is due to negligence or intentional disregard of rules and regulations. [12] Accordingly, we need *371 not address for purposes of this section, whether petitioners' conduct, with respect to claimed travel expenses, was negligent. [13]
*372 Section 6653(a)(2) states that there shall be added to the tax in addition to that added under section 6653(a)(1), an amount equal to 50 percent of the interest payable under section 6601 with respect to the portion of the underpayment which is attributable to negligence or intentional disregard.[14] We must therefore determine whether that portion of the underpayment which is attributable to the claim for travel expenses was attributable to negligence. Unlike the addition imposed by section 6653(a)(1), the addition imposed by section 6653(a)(2) does not apply to the "entire underpayment" simply because "any part" of the underpayment is due to negligence. *373 Negligence is lack of care or failure to do what a reasonable and ordinarily prudent person would do under the circumstances. . Although taxpayers are not subject to the addition to tax for negligence where they make honest mistakes in complex matters, they are required to take reasonable steps to determine the law and to comply with it. See , affd. without published opinion ; , affd. without published opinion . Petitioners have conceded negligence with respect to that part of the underpayment attributable to Schedule C expenses and investment tax credit. However, we think there was enough uncertainty about whether travelling expenses were deductible under the circumstances here involved to conclude that petitioner's mistake in claiming the deduction was an honest mistake. Petitioner's testimony indicates that he took reasonable steps to determine what the law was and how it was to be applied to the deductibility of *374 his travel expenses. He kept reasonably good contemporaneous records of the expenses he incurred. While in these modern times a city dweller might accept a 110 mile round trip to and from his work place as a reasonable commute, a person living in Kittitas, Oregon in 1982 might have considered such a trip to be travelling away from home. Consequently, petitioners are not liable under section 6653(a)(2) for the addition to tax with respect to the underpayment attributable to the travelling and meal expenses incurred in working in Quincy during 1982. Of course, petitioners are liable under section 6653(a)(2) for the addition to tax with respect to that portion of the underpayment attributable to the Schedule C expenses and investment tax credit. Decision will be entered under Rule 155.
Footnotes
1. Unless otherwise indicated, all section references are to the Internal Revenue Code of 1954, as amended, and in effect during the year in issue. All Rule references are to the Tax Court Rules of Practice and Procedure. ↩
2. Petitioners have conceded that they are not entitled to deduct Schedule C business expenses in the amount of $ 2,293.00, and that they are not entitled to investment tax credit in the amount of $ 322.00. Petitioners have also conceded the additions to tax under section 6653(a)(1) and 6653(a)(2) for the parts of the deficiency relating to Schedule C expenses and the investment tax credit. ↩
3. An unnamed man. ↩
4. The record does not indicate how far such discussions proceeded. Petitioners did not produce any written document or correspondence which would indicate whether Mid-State's owner was interested in selling the business to Stephen. ↩
5. Petitioners' home encumbered by a mortgage on which they were making payments. ↩
6. Petitioner conceded that this amount was not deductible. ↩
7. Respondent does not invoke the "sleep or rest" rule of , perhaps because of Stephen's very lengthy spilt shift workday which led Stephen to nap in his employer's office between his morning and evening shifts. ↩
8. Section 262. PERSONAL, LIVING, & FAMILY EXPENSES. Except as otherwise expressly provided in this chapter, no deduction shall be allowed for personal, living or family expenses. ↩
9. Section 162. TRADE OR BUSINESS EXPENSES. (a) In general.-There shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, including * * * (2) Traveling expenses (including amounts expended for meals and lodging other than amounts which are lavish or extravagant under the circumstances) while away from home in the pursuit of a trade or business; * * *.↩
10. , reversed , is factually distinguishable. ↩
11. Section 6653(a)(1). NEGLIGENCE OR INTENTIONAL DISREGARD OF RULES AND REGULATIONS WITH RESPECT TO INCOME, GIFT, OR WINDFALL PROFIT TAXES.- (1) In general.-If any part of any underpayment (as defined in subsection (c)(1)) of any tax imposed by subtitle A, by Chapter 12 off subtitle B or by Chapter 45 (relating to windfall profit tax) is due to negligence or intentional disregard of rules and regulations (but without intent to defraud), there shall be added to the tax an amount equal to five percent of the underpayment.↩
12. See , affd. by order (4th Cir., Aug. 29, 1985).↩
13. Respondent states that petitioner has conceded the addition with respect to the underpayment resulting from disallowance of the Schedule C expenses and investment tax credit. However, there is nothing in the stipulation or elsewhere in writing to that effect. But since petitioner does not argue to the contrary, and when asked on cross examination whether he conceded the negligence issue on both the Schedule C expenses and the investment tax credit, his response was in the affirmative, we conclude that he has so conceded. ↩
14. 6653(a)(2) ADDITIONAL AMOUNT FOR PORTION ATTRIBUTABLE TO NEGLIGENCE, ETC.-There shall be added to the tax (in addition to the amount determined under paragraph (1)) an amount equal to 50 percent of the interest payable under section 6601- (A) with respect to the portion of the underpayment described in paragraph (1) which is attributable to the negligence or intentional disregard referred to in paragraph (1), and (B) for the period beginning on the last date prescribed by law for payment of such underpayment (determined without regard to any extension) and ending on the date of the assessment of the tax. ↩