# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

———

Argued September 11, 2018      Decided November 2, 2018

No. 17-1204

RICHARD LILJEBERG,
APPELLANT

v.

COMMISSIONER OF INTERNAL REVENUE SERVICE,
APPELLEE

———

Consolidated with 17-1205, 17-1207

———

On Appeal from the Decision
of the United States Tax Court

———

*Leigh D. Roadman* argued the cause for appellants. With him on the briefs were *Daniel T. Hartnett* and *Steven S. Brown*.

*Norah Bringer*, Attorney, U.S. Department of Justice, argued the cause for appellee. On the brief were *Richard Farber* and *Regina S. Moriarty*, Attorneys. *Travis A. Greaves*, Deputy Assistant Attorney General, entered an appearance.

Before: ROGERS and PILLARD, *Circuit Judges*, and SENTELLE, *Senior Circuit Judge*.

2

Opinion for the Court filed by *Circuit Judge* ROGERS.

ROGERS, *Circuit Judge*: This is an appeal from the decision of the Tax Court denying a deduction on income earned by three foreign nationals who participated in the State Department's Summer Work Travel Program in 2012. The Internal Revenue Service denied appellants' claimed tax deduction for travel and living expenses incurred "while away from home in the pursuit of a trade or business," 26 U.S.C. § 162(a)(2). The Tax Court affirmed because appellants' travel and living expenses were not so incurred but arose from a personal choice to participate in the Summer Work Travel Program rather than the demands of their (temporary) employers. We affirm.

## I.

The State Department administers the Exchange Visitor Program, which designates sponsors "to provide foreign nationals with opportunities to participate in educational and cultural programs in the United States and return home to share their experiences." 22 C.F.R. § 62.1(b) (2012); *see* Mutual Educational and Cultural Exchange Act of 1961, Pub. L. No. 87-256, 75 Stat. 527 (codified as amended at 22 U.S.C. § 2452). One component of the Exchange Visitor Program is the Summer Work Travel Program, which provides "foreign students who are enrolled full-time and pursuing studies at accredited post-secondary academic institutions . . . with the opportunity to work and travel in the United States" for a period of up to four months, during their summer vacations. 22 C.F.R. § 62.32(b), (c). Income earned is subject to federal income taxes. 26 U.S.C. § 871(b)(1), (c). To participate in the Summer Work Travel Program, a student must obtain a nonimmigrant visa, known as a "J visa," 22 C.F.R. § 62.1(b), which, as relevant here, is issued to "an alien having a residence

in a foreign country which [the person] has no intention of abandoning," 8 U.S.C. § 1101(a)(15)(J).

Appellants are foreign nationals who participated in the Summer Work Travel Program in the summer of 2012. (1) Richard Liljeberg is a citizen of Finland who worked as a lifeguard at Noah's Ark in Wisconsin as part of the Program. Liljeberg sought to deduct "$995 for airfare to and from the United States, $500 for the cost of the program, $35 for the cost of his J-1 Visa, and $170 for insurance." Before participating in the Program, he was a full-time university student in Finland, where he lived with his mother and worked at a company called ISS Security. Upon returning to Finland, Liljeberg "lived alone in [a] rental home" and "did not return to work at ISS Security." (2) Anna Zolotareva is a citizen of Russia who "worked as a housekeeper at the Roche Harbor Resort in San Juan Island, Washington." She sought to deduct $1,100 in travel expenses. Before participating in the Program, Zolotareva was a full-time university student in Russia, where she lived with her parents. Upon her return to Russia, she lived with her parents. (3) Enda Conway is a citizen of Ireland who "worked as a server at Gosman's Dock Restaurant in Montauk, New York." He sought to deduct $2,000 in travel expenses and $1,157 in meals and entertainment expenses. Conway was a full-time university student in Ireland in 2012 and "maintain[ed] his home in Ireland" in 2012 by "pay[ing] his phone bill, gym membership, and money to his mother." Conway did not work in Ireland in 2012.

The Internal Revenue Service ("IRS") issued notices of deficiency to appellants for their 2012 federal income taxes, reflecting denials of the claimed deductions under 26 U.S.C. § 162(a)(2) for travel and living expenses incurred as a result of their participation in the Summer Work Travel Program. Appellants petitioned for redetermination of their deficiencies,

and the Tax Court affirmed. Appellants' 2012 expenditures for travel and living expenses were not "away from home" under § 162(a)(2), the Tax Court ruled, because they lacked "a business reason to maintain a distant, separate residence" away from their principal place of employment and so could not claim a personal residence as a tax home. Tax Ct. Op. 24 (citing *Wirt v. Comm'r*, 55 T.C.M. (CCH) 1369, 1371 (1988); *Tucker v. Comm'r*, 55 T.C. 783, 786 (1971)). As "full-time students from abroad who came to the United States to work for a single summer before returning to their home countries," appellants had no "business connections with their respective home countries." *Id.* at 26. Nor did their status as "J visa" holders render them at home in their home countries for purposes of the deduction inasmuch as a person's "residence" under immigration law is "not necessarily coterminous" with a taxpayer's "home" under § 162(a)(2). *Id.* at 27. Noting that there was "no requirement at law that [a Summer Work Travel Program] participant maintain a second abode in his home country," the Tax Court concluded appellants did not incur additional travel and living expenses "because of the exigencies of [their] trade or business." *Id.* at 28. Rather, "those expenses were by their personal choice and not by a dictate of their employers or the law." *Id.* at 29. This appeal followed.

## II

Appellants contend they were "away from home" under 26 U.S.C. § 162(a)(2) based on a private letter ruling by the IRS and IRS guidance purportedly indicating that foreign students holding student visas may deduct travel expenses. They also point to the requirement that "J visa" recipients have an abode in their home countries which they have "no intention of abandoning." Appellants' Br. 33. Appellants further contend that because their employment was temporary, they were not

required to show their expenses were incurred due to business exigencies. But even if required to make such a showing, appellants contend they satisfy the business exigencies test because the travel and living expenses were incurred to meet the requirements of the Summer Work Travel Program and to work in the United States.

This court reviews decisions of the Tax Court "in the same manner and to the same extent as decisions of the district courts in civil actions tried without a jury." 26 U.S.C. § 7482(a)(1). The Tax Court's legal determinations are reviewed *de novo*; its factual findings and "disposition of mixed questions of law and fact" are reviewed for clear error. *Jombo v. Comm'r*, 398 F.3d 661, 663 (D.C. Cir. 2005). Tax deductions are strictly construed because they are "a matter of legislative grace"; "the burden of clearly showing the right to the claimed deduction is on the taxpayer." *INDOPCO, Inc. v. Comm'r*, 503 U.S. 79, 84 (1992). The Tax Court's interpretation of what § 162(a)(2) requires a taxpayer to show is a legal conclusion subject to *de novo* review, *cf. Rogers v. Comm'r*, 783 F.3d 320, 324 (D.C. Cir. 2015), whereas the determination of whether a taxpayer met that burden is reviewed for clear error, *see Green Gas Del. Statutory Tr. v. Comm'r*, 903 F.3d 138, 145 (D.C. Cir. 2018).

The Internal Revenue Code provides that "[e]xcept as otherwise expressly provided . . . , no deduction shall be allowed for personal, living, or family expenses." 26 U.S.C. § 262(a). Section 162 is an exception for certain trade or business expenses, providing that a taxpayer may deduct "all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, including . . . traveling expenses . . . *while away from home in the pursuit of a trade or business*." *Id.* § 162(a)(2) (emphasis added). "[T]he taxpayer shall not be treated as being temporarily away from home during any period of employment if such period exceeds

1 year." *Id.* § 162(a). To qualify for this deduction, a taxpayer must show that the expenses are (1) "ordinary and necessary," (2) incurred while the taxpayer was "away from home," and (3) incurred "in the pursuit of a trade or business." *Id.*; *see Comm'r v. Flowers*, 326 U.S 465, 470 (1946). Even if appellants' claimed expenses were necessary and their temporary employment would raise an inference that they were "away from home," they fail to meet the third condition that their expenses were incurred "in the pursuit of a trade or business."

In *Flowers*, 326 U.S. at 472, the Supreme Court, construing a previous version of § 162(a)(2), concluded it was "unnecessary" to resolve whether the word "home" meant a taxpayer's principal place of business or his place of residence, because even if the Tax Court's interpretation of the word "home" as the taxpayer's principal place of business was implicit in its decision and even if that interpretation was wrong, its judgment had to be sustained "if it properly concluded that the necessary relationship between the expenditures and the [employer's] business was lacking. Failure to satisfy any one of the three conditions destroys the traveling expense deduction." *Id.* The Court explained:

> Travel expenses in pursuit of business within the meaning of [now § 162(a)(2)] could arise only when the [employer's] business forced the taxpayer to travel and to live temporarily at some place other than [his usual residence], thereby advancing the interests of the [employer]. Business trips are to be identified in relation to business demands and the traveler's business headquarters. The exigencies of business rather than the personal conveniences and necessities of the traveler must be the motivating factors.

*Id.* at 474.

Since *Flowers*, the IRS, several courts of appeals, and the Tax Court have interpreted "home" as a taxpayer's principal place of business, *see, e.g.*, *Andrews v. Comm'r*, 931 F.2d 132, 136-37 (1st Cir. 1991), whereas others have held that "home" means a taxpayer's usual residence. For instance, in *Rosenspan v. United States*, 438 F.2d 905, 911-12 (2d Cir. 1971), the Second Circuit concluded that "[w]hen Congress uses such a non-technical word in a tax statute, presumably it wants administrators and courts to read it in the way that ordinary people would understand." In its view, interpreting "home" in light of the business exigencies condition is "unnecessary for the protection of the revenue that [the Commissioner] seeks." *Id.* at 911. That is, proper application of the business exigencies condition as articulated in *Flowers* would eliminate any risk of taxpayers deducting travel expenses incurred for personal reasons. *See id.*

Similarly, even if "home" generally means a taxpayer's principal place of business, *see* Tax Ct. Op. 16, and even if temporary employment raises an inference that the taxpayer is "away from home," this does not eliminate the third statutory condition. Courts have held that when a taxpayer "expects to be employed in a location for only a short or temporary period of time," the "reasonable inference is that he is temporarily making these travels because of a business necessity," *Frederick v. United States*, 603 F.2d 1292, 1294-95 (8th Cir. 1979), and "it would be unreasonable to expect the taxpayer to move his home," *Rosenspan*, 438 F.2d at 912. Both *Frederick* and *Rosenspan* involved taxpayers whose business or trade required them to travel for temporary posts of employment in other cities and who were not expected to move their homes for these temporary posts. In *Peurifoy v. Commissioner*, 358 U.S. 59, 60 (1958), the Supreme Court noted that the Tax Court had

treated temporary (as distinct from indefinite or indeterminate) employment as an "exception" to the "general rule" under the travel expense deduction. To that extent, had there been the necessary employment connection, it would be reasonable to infer appellants were "away from home" because they worked in the United States temporarily. *See generally Putnam v. United States*, 32 F.3d 911, 917 (5th Cir. 1994). That inference, however, does not eliminate the third statutory condition that the claimed expenses must be incurred "in the pursuit of a trade or business." 26 U.S.C. § 162(a)(2).

Appellants contend courts need not inquire into why a temporarily employed taxpayer incurs travel expenses, but they cite no authority for that proposition. Nothing in the IRS materials on which they rely supports their view. Revenue Ruling 93-86, 1993-40 I.R.B. 4, which they consider to support the view that the Summer Work Travel Program is temporary employment so their travel expenses are fully deductible, is inapposite; the taxpayers addressed there were regularly employed in one city before accepting a work assignment in another city. Further, the Commissioner notes that "a written determination" such as the private letter ruling appellants cite "may not be used or cited as precedent." Appellee's Br. 35 n.7 (quoting 26 U.S.C. § 6110(k)(3)). Appellants also rely on an IRS publication stating that a "nonresident alien [scholarship] student or grantee may deduct away-from-home expenses (meals, lodging, and transportation) . . . if he or she expects to be away from his or her tax home for 1 year or less." Internal Revenue Service, Publication 515, *Withholding of Tax on Nonresident Aliens and Foreign Entities*, at 22 (2012). That publication neither cites § 162(a)(2) nor states that, for temporary employment, expenses need not be incurred as a result of business exigencies. Agency guidance could not, in any event, contradict the plain terms of the third condition of

the statute.  *Cf. Air Line Pilots Ass'n, Int'l v. Chao*, 889 F.3d 785, 792 (D.C. Cir. 2018).

The Supreme Court in *Flowers* interpreted the phrase "in the pursuit of a trade or business" to require "a direct connection between the expenditure and the carrying on of the trade or business of the taxpayer or of his employer."  326 U.S. at 470.  Consequently, "[t]ravel expenses in pursuit of business within the meaning of" 26 U.S.C. § 162(a)(2) "could arise only when the [employer's] business forced the taxpayer to travel and to live temporarily at some place other than" the taxpayer's home.  *Id.* at 474.  Appellants, who bear the burden to show the deduction applies, point to nothing that would suggest Congress intended to dispense with business exigencies as a condition for application of the deduction in their circumstances.  Such legislative history as exists indicates that Congress was concerned primarily with "persons traveling on business," i.e., "commercial travelers of the country, and especially those who are traveling on a commission basis."  61 Cong. Rec. 5201 (1921) (statement of Rep. Hawley).  Appellants were not employed in their home countries when they traveled to the United States for temporary employment and did not return to existing jobs when they returned home.  Although the Supreme Court in *Peurifoy* did not disturb the Tax Court's application of "an exception" where the taxpayers were construction workers away on "temporary employment," its holding was limited to whether the "Court of Appeals has made a fair assessment of the record" on the factual question of whether the taxpayers' employment was temporary.  358 U.S. at 60-61.  Relying on the extra-textual doctrine of temporary employment to excuse failure to satisfy the business exigencies condition would allow an exception to swallow the rule and ignore that deductions are to be "strictly construed," *INDOPCO*, 503 U.S. at 84.

In urging that "the 'temporary' work exception . . . was intended to override the business exigencies test," Appellants' Br. 30, appellants maintain that the Tax Court erred in viewing *Hantzis v. Commissioner*, 638 F.2d 248, 255 (1st Cir. 1981), to "represent[] a fair statement of the law," Tax Ct. Op. 25. They suggest the First Circuit "appears to have confused the temporary work exception with the well-established 'itinerant' rule" and therefore "reasoned that 'only a taxpayer who lives in one place, works in another, and has business ties to both is in the ambiguous situation that the temporary employment doctrine is designed to resolve.'" Appellants' Br. 29 (quoting *Hantzis*, 638 F.2d at 255). This contention does not advance appellants' cause. Under *Flowers*, the third condition is met only when the employer's "business forced the taxpayer to travel and to live temporarily at some place other than" the taxpayer's home. *Flowers*, 326 U.S. at 474. Expenses incurred "solely as the result of the taxpayer's desire to maintain a home" in one place while working in another are "irrelevant to the maintenance and prosecution" of the employer's business. *Id.* at 473. Applying *Flowers*, this court upheld the Tax Court's denial of a deduction because the taxpayer "neither maintained a place of abode in Atlanta, nor brought his family to Washington, in order to do the work which he was employed to do." *York v. Comm'r*, 160 F.2d 385, 386 (D.C. Cir. 1947). Therefore, even if appellants were "away from home," any expenses must satisfy the business exigencies condition. Appellants fail that prong.

Appellants Liljeberg, Zolotareva, and Conway worked in the United States during the summer of 2012 at Noah's Ark, Roche Harbor Resort, and Gosman's Dock Restaurant, respectively. These employers did not require employees to move to the United States temporarily; rather, appellants chose to come to the United States to participate in the Summer Work Travel Program. Their travel expenses flowed from that choice

rather than the needs of their temporary employers. To the extent obtaining a "J visa" required appellants to have no intention of abandoning a residence in their home countries, 8 U.S.C. § 1101(a)(15)(J), appellants would equate maintaining an abode for immigration purposes and maintaining a home for business purposes, but the Tax Court has rejected that equivalence. *See* Tax Ct. Op. 27 (citing *Pappas v. Comm'r*, 34 T.C.M. (CCH) 1397, 1398 (1975)). Shifting the focus from the demands of the taxpayer's employer to the requirements of immigration law would expand the travel expenses deduction in defiance of *Flowers* and the narrow scope accorded to deductions.

Finally, appellants' reliance on *United States v. LeBlanc*, 278 F.2d 571, 577 (5th Cir. 1960), is misplaced. There, state law required a Louisiana judge to maintain a home in Napoleonville, his usual residence, and to perform certain judicial duties in New Orleans. *Id.* at 574-75. Appellants maintain that they are like Justice LeBlanc because they, too, were legally "required to maintain home abodes in their home countries to be able to work in [the] jobs they did in the U.S. during 2012." Appellants' Br. 35. But the state law requirement of multiple homes in *LeBlanc* was relevant only because the judge's employer was the state of Louisiana. 278 F.2d at 576. The judge's travel and living expenses resulted from the demands of his employer rather than "the personal conveniences and necessities of the traveler." *Flowers*, 326 U.S. at 474. Appellants' employers were not the source of the travel and living expenses. Rather, appellants incurred those expenses because they voluntarily chose to participate in the Summer Work Travel Program. Allowing foreign students who travel to the United States on a "J visa" for temporary employment to deduct their travel expenses when students who are U.S. citizens traveling within the United States to seek temporary employment cannot, *see Weiberg v. Comm'r*, 639

F.2d 434, 437 (8th Cir. 1981), would be a peculiar and irrational result.

Accordingly, because appellants did not incur the travel and living expenses at issue "in the pursuit of a trade or business," they may not deduct those expenses under 26 U.S.C. § 162(a)(2), and we affirm the judgment of the Tax Court.