# United States Tax Court

T.C. Memo. 2023-21

ESTATE OF PEARL B. KALIKOW, DECEASED, EUGENE SHALIK, EXECUTOR, AND EDWARD M. KALIKOW AND LAURIE K. PLATT, LIMITED ADMINISTRATORS,
Petitioners

v.

COMMISSIONER OF INTERNAL REVENUE,
Respondent

————————

Docket No. 14436-10.                                  Filed February 27, 2023.

————————

*Thomas J. McGowan, Austin T. Wilkie, Andrew H. Weinstein, Kevin M. Flynn*, and *Stephen Marc M. Breitstone*, for petitioners.

*Erika B. Cormier* and *Nina P. Ching*, for respondent.


MEMORANDUM OPINION

THORNTON, *Judge*: By notice of deficiency, respondent determined a $32,714,684 deficiency in estate tax for the Estate of Pearl B. Kalikow (estate).

Pearl B. Kalikow (decedent) was predeceased by her husband, Sidney Kalikow (decedent's husband). Decedent's husband's will made decedent the beneficiary of a qualified terminable interest property (QTIP) trust, known as the SK Trust, which entitled her to income distributions for life. After decedent's death, litigation ensued in state court over whether all the income from the SK Trust property had been properly distributed to her during her lifetime. This litigation was eventually settled with an agreement that the SK Trust would pay the estate $9.2 million (agreed-upon settlement payment). Of that amount, $6,572,310 was designated for undistributed income claims (agreed-

[*2] upon undistributed income amount), and the balance was designated for various commissions and fees.

The parties having settled all other issues, this case is before the Court on Cross-Motions for Partial Summary Judgment as to (1) whether the value of the SK Trust assets included in the value of the gross estate pursuant to section 2044 is properly reduced by the agreed-upon undistributed income amount and (2) whether the estate is entitled to deduct any part of the agreed-upon settlement payment as administration expenses pursuant to section 2053.[1] Except as relates to respondent's concession of the deductibility of a particular commission, we answer these questions in the negative.

*Background*

Decedent resided in New York when she passed away on January 4, 2006. Decedent's husband predeceased her in 1990.

I.    *The SK Trust*

Article Third of decedent's husband's will created the SK Trust, which was funded with the residue of his estate. Decedent's husband's will instructed the trustees of the SK Trust to pay the trust's net income to decedent at least quarterly during her lifetime and authorized the trustees to make discretionary principal distributions to her. Upon decedent's death the SK Trust assets were to be paid over to trusts (known as the Article Fourth Trust and the Article Fifth Trust) for the benefit of decedent's husband's and decedent's two children, Edward Kalikow and Lauren Platt (collectively, limited administrators), respectively, and their issue. The executors of decedent's husband's estate elected to treat the SK Trust as a QTIP trust under section 2056(b)(7).

The property that passed to the SK Trust on decedent's husband's death consisted primarily of interests in ten income-producing apartment buildings in New York City. In 1997 the then trustees of the SK Trust entered into a limited partnership agreement creating the Kalikow Family Partnership, L.P. (KFLP). The SK Trust transferred

---

[1] Unless otherwise indicated, all statutory references are to the Internal Revenue Code (Code), Title 26 U.S.C., in effect at all relevant times, all regulation references are to the Code of Federal Regulations, Title 26 (Treas. Reg.), in effect at all relevant times, and all Rule references are to the Tax Court Rules of Practice and Procedure.

[*3] the interests in the apartment buildings to KFLP in exchange for a 98.5% limited partnership interest in KFLP.[2] At the time of decedent's death, the KFLP limited partnership interest, along with $835,000 of cash and marketable securities, constituted the principal property held in the SK Trust.

At the time of decedent's death, the trustees of the SK Trust were Mr. Kalikow and Eugene Shalik. Shortly after decedent's death, Ms. Platt was also made a trustee of the SK Trust.

II. *Decedent's Will*

Decedent's last will and testament was executed on July 16, 2003. Under that will the SK Trust is responsible for its share of the estate tax arising from the inclusion of the SK Trust property in decedent's estate. After the payment of certain bequests and administration expenses, the residue of decedent's estate was bequeathed to the Sunshine Foundation, a charitable organization established by decedent under the laws of New York. In April 2006 Mr. Shalik and James DeVita were appointed preliminary executors of the estate. (We will sometimes refer to Mr. Shalik and Mr. DeVita as the executors.)

III. *Proceedings in the Surrogate's Court*

On November 9, 2009, one of decedent's grandchildren petitioned the Nassau County Surrogate's Court for the State of New York (Surrogate's Court) to compel Mr. Shalik to render an account of his proceedings as co-trustee of the SK Trust. Mr. Shalik and Mr. Kalikow filed competing accounts of the SK Trust. In his amended petition to the Surrogate's Court, Mr. Shalik alleged that "KFLP had failed to distribute to the [SK Trust] [its] . . . full share of KFLP distributable amounts, thereby diminishing Pearl Kalikow's proper receipt of trust income by the amount of $16,946,827."[3] Mr. Shalik requested the Surrogate's Court to order the SK Trustees to pay this amount, plus interest, to the estate, from the SK Trust's income on hand. By contrast,

---

[2] The remaining 1.5% interest was held by two unrelated entities: (1) The Sidney and Pearl Kalikow Foundation, a section 501(c)(3) charitable organization, held a .5% limited partnership interest in KFLP as a gift from decedent; and (2) Kalikow Management, Inc., which was formed to act as the general partner of KFLP, held a 1% limited partnership interest in KFLP.

[3] Mr. Shalik's amended petition noted that the estate's counsel had originally estimated that the amount due to the estate from the SK Trust was $4,632,489 but after additional analysis had determined that the actual amount was $16,946,827.

**[*4]** the limited administrators' petition to the Surrogate's Court asserted that there had been an *overdistribution* of $3,267,267.23 from the SK Trust to decedent.

The parties litigated this matter in the Surrogate's Court for about 10 years.[4] On March 28, 2019, the parties settled and agreed that the SK Trust would pay the estate $9,200,000.[5] The settlement agreement states in part:

> The Parties agree that the "Settlement Payment", as set forth in this Paragraph, shall be paid in readily available funds by the Article THIRD Trust [i.e., SK Trust], and the Article THIRD Trust, the Article FOURTH Trust, the Article FIFTH Trust shall be jointly and severally liable for the Settlement Payment, which payment shall encompass undistributed income for the period from January 1, 2002 through December 31, 2005, as set forth in Schedule A hereof, fiduciary commissions, including paying out commissions upon Pearl's death, accounting fees and disbursements solely in connection with the account of the fiduciary's acts and proceedings as trustee for the period from December 9, 2002 through January 4, 2006, and legal fees and disbursements incurred solely in connection with these proceedings. Accordingly, the Settlement Payment shall be comprised of the following:
>
> | | |
> |---|---|
> | Undistributed Income | $6,572,310.00 (to Pearl's Estate) |
> | Trustee Paying Out Commission | $838,044.00 (to Eugene Shalik) |
> | Trustee Annual Commission | $24,906.00 (to Eugene Shalik) |
> | Accounting Fees | $331,000.00 (to Shalik Morris & Co.) |
> | Legal Fees | $1,433,740.00 (to Pearl's Estate) |
> | Total | $9,200,000.00 ("the Settlement Payment") |
>
> Co-Trustee Kalikow on behalf of the Article THIRD Trust shall be responsible for the payment of the fee required pursuant to SCPA § 2402 with respect to entry thereof, if any. To induce Shalik and DeVita to accept the terms of the Settlement Payment set forth herein, Kalikow and Platt, as trustees of the Article THIRD, FOURTH and/or

---

[4] The instant proceedings were placed on report status pending the resolution of the proceedings in the Surrogate's Court.

[5] According to the limited administrators' Memorandum of Law in Support of Cross-Motion for Partial Summary Judgment, the settlement payment had not yet been made when that document was filed.

[*5] FIFTH Trusts, represent and warrant that the assets of the Article THIRD, FOURTH and/or FIFTH Trusts, exclusive of KFLP, are liquid assets (such as marketable securities) that are sufficient in value to cover the entire Settlement Payment, and they shall maintain said liquid assets as security for the Settlement Payment and shall not encumber, assign, transfer or invest such assets in a manner that is likely to result in the depletion thereof until payment in full is made hereunder. In the event of a breach of the foregoing, Kalikow and Platt shall fund the Article THIRD, FOURTH and/or FIFTH Trusts with assets of sufficient value to cover any such encumbrance, assignment or transfer of these assets or a decrease in the value of these assets (exclusive of KFLP), to the extent these assets are not available to fully satisfy the Settlement Payment in the event of a default under Paragraph (8) of this Article III.

Schedule A of the settlement agreement (as referenced in the quoted material above) indicates that the $6,572,310 undistributed income amount was calculated as the sum of adjustments to various expenses (for capital improvements, lead paint repairs, refinancing expenses, legal fees, painting and decorating, repairs and maintenance, professional fees, management fees, asbestos removal, and mold removal) incurred by KFLP in connection with the apartment buildings it owns plus a $360,389 adjustment to "Life Insurance Payments."

IV. *The Estate Tax Returns*

Pursuant to a decree dated September 18, 2007, the Surrogate's Court awarded Mr. Kalikow and Ms. Platt permanent limited letters of administration "specifically for the purposes of filing, supplementing and defending any audit and/or any judicial tax proceeding relating to that portion of Decedent's estate tax return concerning the SK Trust." The decree ordered the limited administrators and the executors to exchange copies of executed Forms 706, United States Estate (and Generation-Skipping Transfer) Tax Return.

In accordance with the Surrogate's Court's decree, on April 6, 2007, the executors filed on the estate's behalf a Form 706 that, according to an accompanying statement, was made "in respect of all assets of the estate other than decedent's interest in the Sidney Kalikow [SK] Trust." On Schedule F, Other Miscellaneous Property Not

[*6] Reportable Under Any Other Schedule, the executors' Form 706 reported total "other miscellaneous property" of $31,869,441, including "UNDISTRIBUTED INCOME DUE FROM THE SIDNEY KALIKOW [SK] TRUST" of $4,632,489, and, with respect to this item, a "CLAIM OF DECEDENT'S ESTATE AGAINST TRUSTEES OF THE SIDNEY KALIKOW [SK] TRUST FOR LOSS OF PROFITS, EXCESS TAXES PAID, INTEREST AND OTHER DAMAGES" in an amount "TO BE DETERMINED."

The limited administrators prepared on the estate's behalf a separate Form 706, filed April 6, 2007, which incorporated the estate's assets and deductions as included on the executors' Form 706 and also included the SK Trust assets.[6] More particularly, the Schedule F attached to the limited administrators' Form 706 incorporated the $31,869,441 of assets (including the $4,632,489 claim for undistributed income from the SK Trust) as reported on the executors' Form 706 and also reported $43,300,000 of SK Trust assets, made up of a 98.5% limited partnership interest in KFLP, with a reported value of $42,465,000, and cash and marketable securities valued at $835,000.[7] In a statement attached to the Form 706, however, the limited administrators noted that they disputed any claim by the executors for amounts due from the SK Trust and its administrators "as those claims have no merit."

V.     *The Notice of Deficiency*

In the notice of deficiency, respondent determined, among other things, that the value of the SK Trust's 98.5% limited partnership interest in KFLP was $105,664,857 instead of $42,465,000 as reported on the limited administrators' Form 706. Respondent also reduced the estate's Schedule F assets by the $4,632,489 value of the estate's pending claim against the SK Trust, as originally reported on the

---

[6] On neither the executors' nor the limited administrators' Form 706 did the estate elect pursuant to section 2032 to have the gross estate valued as of a date subsequent to decedent's death.

[7] The $4,632,489 claim for undistributed income from the SK Trust was included on line 4 of the limited administrators' Schedule F as part of the $16,604,991 reported value of "BALANCE OF SCHEDULE F AS PER RETURN FILED BY PRELIMINARY EXECUTORS."

**[*7]** executors' Schedule F and as incorporated in the estate's assets reported on the limited administrators' Schedule F. [8]

## VI.    *Proceedings in This Court*

Mr. Shalik and the limited administrators separately petitioned this Court on the estate's behalf.[9]  Mr. Shalik's Petition assigns error to, among other things, respondent's decreasing the gross estate by the $4,632,489  value of the estate's claim against the SK Trust as reported on Schedule F of the executors' Form 706 and asks this Court to include this asset in the gross estate with a value of $16,946,827, rather than the smaller amount originally reported on the executors' Schedule F.[10] Mr. Shalik's Petition also asserts that the estate will be entitled to an increased charitable contribution deduction proportionate to such increases in estate tax value.

The limited administrators' Amendment to Petition, like Mr. Shalik's Petition, assigns as error respondent's decreasing the gross estate by the $4,632,489 value of the estate's claim against the SK Trust.[11]  The limited administrators' Amendment to Petition (unlike Mr.

---

[8] The explanation of adjustments attached to the notice of deficiency states with regard to this determination: "It is determined that the value of a claim of the estate pending against the Trustees of the SK Trust is $11,972,502, rather than $16,604,991 as shown on the return.  Accordingly, the taxable estate is decreased by $4,632,489."  This explanation seems factually incorrect in stating that the estate's return showed the value of the estate's pending claim against the SK Trust trustees as having a value of $16,604,991.  As explained above, the value of this claim as reported on Schedule F of the executors' Form 706, and as incorporated into the values reported on Schedule F of the limited administrators' Form 706, was only $4,632,489, with the remaining $11,972,502 representing the balance of various other assets originally reported on Schedule F of the executors' Form 706.  *See supra* note 7.

[9] Mr. Shalik's Petition was assigned docket No. 14436-10.  The limited administrators' Petition was assigned docket No. 15678-10.  By Order, the Court closed docket No. 15678-10 on grounds of duplication, and the Petition and Answer in docket No. 15678-10 were filed as an Amendment to Petition and as the Answer to Amendment to Petition, respectively, in docket No. 14436-10.

[10] The $16,946,827 value correlates to the value placed on the estate's claim against the SK Trust as included in Mr. Shalik's amended petition to the Surrogate's Court.  *See supra* note 3.

[11] The Amendment to Petition assigns as error: "The Commissioner erred in determining that the value of a claim against the Trustees of the SK Trust is $11,972,502, rather than $4,632,489 as shown on the return."  As noted, the notice of deficiency appears to have erroneously described the value of the claim against the SK Trust trustees as reported on the estate's returns.  *See supra* note 8.

[*8] Shalik's Petition) goes on to assert that "the value of the SK Trust should be reduced by the amount of any claim allowed for undistributed income due the Estate from the SK Trust." Furthermore, the Amendment to Petition states that only the resulting net value should be included in decedent's gross estate under section 2044.

The parties represent that they have settled most of the outstanding issues. The limited administrators and respondent have stipulated, among other things, that the value of the SK Trust's 98.5% limited partnership interest in KFLP at the date of decedent's death was $54,492,712.

The parties agree that the only outstanding matters to be decided relate to the agreed-upon settlement payment's effect, if any, on the value of the SK Trust assets included in decedent's gross estate. Respondent has moved for partial summary judgment that the agreed-upon settlement payment does not reduce the value of decedent's gross estate. In their Cross-Motion for Partial Summary Judgment the limited administrators assert that (1) the value of the SK Trust assets included in the estate pursuant to section 2044 is properly reduced by the agreed-upon undistributed income amount, and (2) the various components of the agreed-upon settlement payment are deductible from the gross estate as administration expenses under section 2053.[12]

*Discussion*

I.   *Applicable Legal Principles*

A.   *Summary Adjudication*

The Court may grant summary judgment when there is no genuine dispute as to any material fact and a decision may be rendered as a matter of law. Rule 121(b); *Sundstrand Corp. v. Commissioner*, 98 T.C. 518, 520 (1992), *aff'd*, 17 F.3d 965 (7th Cir. 1994). Respondent and the limited administrators have filed Cross-Motions for Partial Summary Judgment, reflecting their agreement on all questions of basic fact as relate to the issues presented in the Cross-Motions. We conclude

---

[12] Attached to the limited administrators' Cross-Motion for Partial Summary Judgment is the affidavit of Mr. Shalik, stating that he is "not a party to" the Cross-Motion for Partial Summary Judgment and "take[s] no position with respect to the motion or the litigation in [the] [T]ax [C]ourt or with respect to the estate tax taxable value and associated estate tax of the SK Trust."

**[\*9]** that this case is appropriate for summary adjudication as to these issues.

      B.    *Estate Tax Provisions*

Section 2001 imposes an estate tax determined, in part, by the value of the taxable estate. § 2001(b). The taxable estate is defined as the gross estate less deductions. § 2051. The gross estate generally includes the value of property described in sections 2033 through 2044. *See* Treas. Reg. § 20.2031-1(a). Under section 2033, a decedent's gross estate includes the value of all property beneficially owned by the decedent at the time of death. *See* Treas. Reg. § 20.2033-1(a). The value of an estate includes, among other things, all choses in action and any rights to income, acquired before death or because of the decedent's death, that remain unpaid at the time of death. *Estate of Curry v. Commissioner*, 74 T.C. 540, 545–46 (1980); *Estate of Aldrich v. Commissioner*, T.C. Memo. 1983-543.

The value of property includible in the gross estate is generally its fair market value at the time of the decedent's death. *See* § 2031(a); Treas. Reg. § 20.2031-1(b). Fair market value is defined as the price that a willing buyer would pay a willing seller, both persons having reasonable knowledge of all the relevant facts and neither person being under a compulsion to buy or sell. *United States v. Cartwright*, 411 U.S. 546, 551 (1973); Treas. Reg. § 20.2031-1(b).

Section 2044(a) generally includes in the gross estate the value of QTIP trust property, i.e., property in which the decedent had a qualified income interest for life and for which a marital deduction was allowed to the estate of a predeceased spouse under section 2056(b)(7). "[T]he QTIP regime employs a fiction that treats QTIP as passing entirely from the first spouse to die to the surviving spouse." *Estate of Morgens v. Commissioner*, 133 T.C. 402, 412 (2009), *aff'd*, 678 F.3d 769 (9th Cir. 2012). The QTIP regime generally allows a transfer of QTIP to qualify for a marital deduction for the first spouse to die and thereby to escape inclusion in that spouse's estate, even though only a life interest passes to the surviving spouse. "[A]t the death of the second spouse, QTIP property is taxed as part of the surviving spouse's estate." *Estate of Mellinger v. Commissioner*, 112 T.C. 26, 32 (1999); *see also Estate of Morgens*, 133 T.C. at 412 ("Inclusion in the transfer tax base of the surviving spouse is the quid pro quo for allowing a marital deduction to the estate of the first spouse to die.").

[*10] Under section 2044 the amount included in the gross estate is generally "the value of the entire interest in which the decedent had a qualifying income interest for life, determined as of the date of the decedent's death." Treas. Reg. § 20.2044-1(d)(1). Consequently, where, as here, the decedent is the beneficiary of a QTIP trust, the decedent's gross estate must generally include the fair market value of the trust assets as of the date of the decedent's death. *See* Treas. Reg. § 20.2044-1(e) (example 1).

II.   *Analysis*

A.   *Inclusion of the SK Trust Assets in the Estate*

The executors of decedent's husband's estate elected to treat the SK Trust as a QTIP trust under section 2056(b)(7). Consequently, under section 2044(a) the SK Trust property is included in decedent's gross estate at its fair market value as of the date of her death. As of that date, the SK Trust held a 98.5% partnership interest in KFLP and $835,000 in cash and marketable securities. The limited administrators and respondent have stipulated, with respect to the adjustment in the notice of deficiency as to this item, that the value of the SK Trust's 98.5% limited partnership interest in KFLP was $54,492,712. Accordingly, pursuant to section 2044(a) decedent's gross estate includes SK Trust assets of $55,327,712 ($54,492,712 plus $835,000).

In the Amendment to Petition, the limited administrators acknowledge that the value of the KFLP limited partnership interest is "includible in the Decedent's gross estate under Code section 2044". The limited administrators assert, however, that the value of this partnership interest should be "reduced by any claims with respect to undistributed income due the Decedent's estate from the SK Trust." In their Memorandum of Law in Support of Cross-Motion for Partial Summary Judgment, the limited administrators expound upon this argument: "[T]he settlement payment of $6,572,310 is being made from the principal of the SK Trust, which represents a portion of the gross estate, to the Estate, which also represents a portion of the gross estate. The consequence of the payment is that the value of the SK Trust must be reduced by $6,572,310, and the value of the Estate must be increased by the exact same amount."

We are unpersuaded. Having stipulated that the relevant value of the SK Trust's KFLP partnership interest was $54,492,712, the limited administrators cannot successfully argue for some lesser value

**[*11]** of this asset on account of the undistributed income payment liability.[13]  In any event, the settlement agreement imposes the liability for the settlement payment jointly and severally upon the SK Trust, the Article Fourth Trust, and the Article Fifth Trust (the latter two trusts having been created by decedent's husband's will for the benefit of Mr. Kalikow and Ms. Platt to receive the residue of the SK Trust after decedent's death).  The liability for the settlement payment does not run to KFLP.  Consequently, there is no basis to conclude that this liability would affect the date-of-death fair market value of the SK Trust's KFLP partnership interest, i.e., the liability would not affect the price of this partnership interest as determined between a hypothetical willing buyer and seller as of the date of decedent's death.[14]  Moreover, the settlement agreement indicates that the settlement payment was not expected to be made from the SK Trust's KFLP partnership interests.[15] Furthermore, according to respondent's undisputed representations it appears that the SK Trust would have an offsetting claim against third parties for the undistributed income payment liability.[16]

The limited administrators assert, and respondent agrees, that the inclusion of the $6,572,310 agreed-upon undistributed income amount in decedent's gross estate will result in an equivalent increased charitable contribution deduction to the estate under section

[13] Respondent represents, and the limited administrators have not disputed, that the $6,572,310 undistributed income amount was not included in the stipulated value of the KFLP partnership interest.

[14] Indeed, the limited administrators did not report any such reduction in value of the KFLP partnership interest on their Form 706, even though the Schedule F also included the estate's $4,632,489 claim for undistributed income from the SK Trust; to the contrary, in a statement attached to the Form 706 they asserted that the estate's claims against the SK Trust for undistributed income "have no merit."

[15] In the settlement agreement, the limited administrators represented and warranted that the settlement payment would be made from liquid assets of the SK Trust, the Article Fourth Trust, and the Article Fifth Trust, and that these liquid assets, "exclusive of KFLP," would be sufficient to cover the entire settlement payment.

[16] In respondent's Response to Cross-Motion for Partial Summary Judgment, respondent asserts, and the limited administrators have not expressly disputed, that

> [t]he items comprising the undistributed income amount of $6,572,310 are all amounts that the Kalikow Family Partnership (KF[L]P) paid, not to the SK Trust, but to third parties, including Edward Kalikow's company, KMC (and deducted from its income as business expenses) . . . .  To the extent that these amounts were excessive or wrongfully paid, the SK Trust had a claim, at Mrs. Kalikow's [decedent's] death, against the payees, such as KMC, or KF[L]P's principal, Edward Kalikow.  This claim offsets the SK Trust's liability to the Estate.

**[\*12]** 2055.[17] The limited administrators suggest that failure to reduce the value of the SK Trust assets by this same amount will result in "double taxation," stating: "[I]n substance, respondent is asking this Court to impose an estate tax on a bequest to charity of $6,572,310." This argument is without merit. Inclusion of the SK trust assets in decedent's gross estate will give rise to neither double taxation nor any estate tax on any charitable bequest but rather will merely give effect to the provisions of section 2044(a).

### B.  *Deductibility Under Section 2053*

As an alternative to their just-discussed arguments for reducing the value of the SK Trust assets included in the estate pursuant to section 2044, the limited administrators assert that "the settlement payment of $6,572,310 from the SK Trust to the Estate is deductible under I.R.C. § 2053(b) as an expense incurred in administering property included in the Decedent's Estate that is not subject to claims, *i.e.*, the SK Trust." Similarly, the limited administrators also argue that the various other components of the agreed-upon settlement payment, designated as covering various commissions and fees, are deductible as administrative expenses pursuant to section 2053.[18] In the Response to

---

[17] Any such increased charitable deduction ostensibly arises by virtue of that provision of decedent's will bequeathing the residue of her estate to the Sunshine Foundation. The parties have not otherwise expressly addressed, and it is unnecessary for us to consider in ruling on the Cross-Motions for Partial Summary Judgment, the extent to which the settlement agreement is properly taken into account in valuing the estate's claim against the SK Trust as of the date of decedent's death. *Cf. United States v. Simmons*, 346 F.2d 213, 216 (5th Cir. 1965) ("Applying the willing buyer and seller test to the claim for income tax refund, we see no reason for concluding that the amount of the settlement necessarily represents the fair market value of the claim at the date of death. The amount of the settlement is relevant but not conclusive."); *Estate of Saunders v. Commissioner*, 136 T.C. 406, 419 (2011) (collecting cases addressing the valuation of claims in favor of an estate and stating that "it is essentially undisputed that postdeath events are not considered in valuing assets in an estate"), *aff'd*, 745 F.3d 953 (9th Cir. 2014).

[18] At various places in their Cross-Motion for Partial Summary Judgment and supporting papers, the limited administrators assert that these various components of the agreed-upon settlement payment are "deductible by the SK Trust." In the Reply to Respondent's Response to Cross-Motion for Partial Summary Judgment, the limited administrators appear to clarify that they are seeking deductions for the estate rather than for the trust. In any event, to be clear, the issue of whether the SK Trust is entitled to any deductions is not properly before us in these proceedings to redetermine the *estate's* deficiency in estate tax. In general, a trust is taxed as a separate entity from its beneficiaries with trust income taxed under section 641 and with deductions

**[\*13]** Cross-Motion for Partial Summary Judgment respondent concedes the deductibility of the $838,044 paying out commission but disagrees that any other components of the agreed-upon settlement payment are deductible.

Section 2053(a) allows a deduction for certain amounts, including administration expenses and claims against the estate, that are allowable by the laws of the jurisdiction under which the estate is administered. Section 2053(b) generally provides a deduction for expenses incurred in administering nonprobate property, to the same extent as they would be deductible under section 2053(a), i.e., if incurred in administering probate property. Such expenses must be "actually and necessarily, incurred in the administration of the decedent's estate; that is, in the collection of assets, payment of debts, and distribution of property to the persons entitled to it." Treas. Reg. § 20.2053-3(a). "The only expenses in administering property not subject to claims which are allowed as deductions are those occasioned by the decedent's death and incurred in settling the decedent's interest in the property or vesting good title to the property in the beneficiaries." Treas. Reg. § 20.2053-8(b).

The parties devote much of their arguments to the question of whether the various components of the agreed-upon settlement payment meet the limitations on deductibility as set forth in Treasury Regulation § 20.2053-8(b). These arguments are misdirected. The limitations on deductibility set forth in these regulations do not apply with respect to claims *in favor of* the estate that are includible in the decedent's gross estate under section 2031. *See Estate of Saunders*, 136 T.C. at 418. The obligation of the SK Trust to make the agreed-upon settlement payment to the estate does not give rise to any deduction *by the estate*. Rather, the estate's claim against the SK Trust is itself property to be included in the gross estate. Even if we were to assume, for the sake of argument and in the absence of any evidence in this regard, that the estate actually incurred the fees and commissions specified as components of the agreed-upon settlement payment, reimbursement of these expenses under the settlement agreement would preclude any deduction by the estate. *See* Treas. Reg. § 20.2053-4(d)(3).

allowed under section 642. In the Response to Cross-Motion for Partial Summary Judgment respondent states that the trustee annual commission, the accounting fees, and the legal fees as provided for in the settlement agreement "are deductible on the SK Trust's Form 1041 when paid." We express no view on the correctness of this statement.

**[\*14]** For these reasons, we hold that the estate is not entitled to deduct under section 2053 any part of the agreed-upon settlement payment other than the $838,044 paying out commission that respondent has conceded.[19]

III.  *Conclusion*

We will thus grant respondent's Motion for Partial Summary Judgment, except as relates to respondent's concession of the deductibility of the paying out commission, and will deny the limited administrators' Cross-Motion for Partial Summary Judgment, except as relates to that same concession.

*An appropriate order will be issued.*

---

[19] Without expressing any view about the legal correctness of respondent's concession, we accept it in the interests of judicial economy. *See Liljeberg v. Commissioner*, 148 T.C. 83, 97 (2017) ("In practice, the Court will accept concessions of law in the interest of judicial economy unless justice requires otherwise."), *aff'd*, 907 F.3d 623 (D.C. Cir. 2018).